Michael B. Kramer (MK 7071)
Peter T. Salzler (PS 2610)
MICHAEL B. KRAMER & ASSOCIATES
488 Madison Avenue, 11th Floor
New York, New York 10022
(212) 319-0304
mkramer@mkramerlaw.com
psalzler@mkramerlaw.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
ABKCO MUSIC & RECORDS, INC.,
ABKCO MUSIC, INC., UMG RECORDINGS,        Civ. Case No.: _____
INC., UNIVERSAL - SONGS OF POLYGRAM
INTERNATIONAL INC.,  POLYGRAM
PUBLISHING, INC., SONGS OF UNIVERSAL, INC.,
and UNIVERSAL MUSIC CORP.,

                Plaintiffs,

    v.

CODA PUBLISHING, LTD., ROBERT KIRK
CARRUTHERS, CLARE ANNE GAMBOLD,
GWILYM MICHAEL DAVIES, and VISION
FILMS, INC.,

                Defendants.
-------------------------------------------------------------------x

       Plaintiffs, ABKCO MUSIC & RECORDS, INC., ABKCO MUSIC, INC., UMG

RECORDINGS, INC., UNIVERSAL - SONGS OF POLYGRAM INTERNATIONAL INC.,

POLYGRAM PUBLISHING, INC., SONGS OF UNIVERSAL, INC., and UNIVERSAL

MUSIC CORP. (collectively "Plaintiffs"), as and for their Complaint against Defendants, CODA

PUBLISHING, LTD. ("Coda"),  ROBERT KIRK CARRUTHERS ("Carruthers"), CLARE

ANNE GAMBOLD ("Gambold"), GWILYM MICHAL DAVIES ("Davies") and VISION

FILMS, INC. ("Vision"), allege as follows:

## NATURE OF THE ACTION

1. This action arises from damages suffered by Plaintiffs as a result of Defendants' infringement of certain musical compositions, master recordings, and films owned and/or controlled by Plaintiffs (collectively, the "Content") that embody some of the most popular and recognizable works of the 20th Century. Plaintiffs seek damages and equitable relief from Defendants' unauthorized commercial exploitation and willful infringement of Plaintiffs' Content.

2. Defendants, without authorization or license from Plaintiffs, have caused to be reproduced, synchronized, distributed, made available, advertised, marketed, offered for sale, sold and/or otherwise commercially exploited in the United States and elsewhere, audio-visual products which embody the Content (the "Infringing Films"). Defendants and/or their agents have made the Infringing Films available for sale or rental on online platforms, including but not limited to, Amazon.com. The Infringing Films consist of purported documentaries of iconic rock bands and artists including The Rolling Stones, Elton John, U2, ABBA, Nirvana, Lynyrd Skynyrd, and the Red Hot Chili Peppers. Defendants have also synchronized Plaintiffs' musical compositions in the Infringing Films and each unauthorized use constitutes a separate act of infringement giving rise to damages pursuant to the United States Copyright Act and New York law.

## PARTIES, JURISDICTION, AND VENUE

3. ABKCO Music and Records, Inc. ("AMR") is a New York corporation with offices located in the City, County and State of New York. AMR is engaged, *inter alia,* in the business of owning, manufacturing, distributing and commercially exploiting in all manner and media throughout the United States and the world phonorecords embodying the musical

performances of many of the legendary artists of the "Rock Era" including The Rolling Stones. Specifically, with respect to this action, AMR is the owner of common law copyrights and/or the owner of all exclusive rights of exploitation with respect to certain sound recordings containing the performances of The Rolling Stones which were recorded prior to February 15, 1972.

4. AMR also does business as ABKCO Films ("AFI"). AFI is a division of AMR and is engaged in the business of making and distributing films including films of the live performances of The Rolling Stones.

5. AMR is the parent company of ABKCO Music Inc. ("AMI").

6. AMI is a New York corporation with offices located in the City, County and State of New York. AMI is engaged in the business of music publishing and owns and/or controls copyrights in musical compositions, including, but not limited to certain musical compositions written, in whole or in part, by Michael Phillip ("Mick") Jagger, Keith Richards, and many other iconic songwriters from the Rock n' Roll era.

7. UMG Recordings, Inc. ("UMG") is a Delaware corporation with its principal place of business in Santa Monica, California. UMG is one of the largest and most successful record companies in the music business. UMG has a rich history of producing, manufacturing, distributing, selling, and otherwise commercially exploiting sound recordings in all manner and media throughout the world by some of the most well-known recording artists of our times and controls a catalog of sound recordings of some of the most famous recording artists in history. UMG has invested substantial money, time, effort, and talent in creating, advertising, promoting, selling, and licensing sound recordings embodying the performances of their exclusive recording artists and their unique and valuable sound recordings.

8. Universal - Songs of Polygram International, Inc. ("Songs of Polygram") is a California corporation with its principal place of business in Santa Monica, California.

9. Polygram Publishing, Inc. ("Polygram Publishing") is a Delaware corporation with its principal place of business in Santa Monica, California.

10. Songs of Universal, Inc. ("Songs of Universal") is a California corporation with its principal place of business in Santa Monica, California.

11. Universal Music Corp. ("UMC") is a California corporation with its principal place of business in Santa Monica, California.

12. Songs of Polygram, Polygram Publishing, Songs of Universal, and UMC are referred to herein collectively as the "UMPG Plaintiffs."

13. The UPMG Plaintiffs are leading music publishers engaged in the business of acquiring, owning, publishing, licensing, and otherwise exploiting copyrighted musical compositions, including, but not limited to those written, in whole or in part, by numerous iconic songwriters of the Rock n' Roll era. Each invests substantial money, time, effort, and talent to acquire, administer, publish, license, and otherwise exploit such copyrights, on its own behalf and on behalf of songwriters and other music publishers who have assigned exclusive copyright interests to the UMPG Plaintiffs.

14. A list of Plaintiffs' Content that has been infringed by Defendants is annexed hereto as Exhibit A.  Exhibit A lists the Infringing Film and each musical composition, sound recording and/or film that was infringed upon by Defendants in the Infringing Film.  It also lists the songwriters of each musical composition as well as the performers for each sound recording and the respective owners/publishers of each composition, sound recording and film.

15. Each of the musical compositions and films listed in Exhibit A have been duly registered with the United States Copyright Office.

16. Each of the sound recordings created after February 15, 1972 listed in Exhibit A have been duly registered with the United States Copyright Office. Each of the sound recordings created prior to February 15, 1972 listed in Exhibit A are subject to New York State law.

17. Upon information and belief, Coda is an English corporation with offices in the United Kingdom.

18. Upon information and belief, Coda and its predecessors in interest, *inter alia,* produce, distribute and commercially exploit purported documentary films relating to famous musicians and rock bands throughout the world, including New York State.

19. Upon information and belief, Carruthers is a resident of the United Kingdom.

20. Upon information and belief, Carruthers is the Director of the Infringing Films.

21. Upon information and belief, Carruthers owns an interest in Defendant Coda and has authorized, directed, ratified, participated in, or benefited from each of the acts complained of herein, or specifically knew, or reasonably should have known that activity under his control and supervision would injure the Plaintiffs.

22. Upon information and belief, Gambold is a resident of the United Kingdom.

23. Upon information and belief, Gambold owns an interest in Defendant Coda and has authorized, directed, ratified, participated in, or benefited from each of the acts complained of herein, or specifically knew, or reasonably should have known that activity under her control and supervision would injure the Plaintiffs.

24. Upon information and belief, Davies is a resident of the United Kingdom.

25. Upon information and belief, Davies owns an interest in Defendant Coda and has authorized, directed, ratified, participated in, or benefited from each of the acts complained of herein, or specifically knew, or reasonably should have known that activity under his control and supervision would injure the Plaintiffs.

26. Upon information and belief, Carruthers, Gambold, and Davies collectively own a controlling interest in Coda.

27. Upon information and belief, Vision is a California corporation with offices in Marina Del Ray, California.

28. Upon information and belief, Vision is a distributor of feature films, documentary specials, series, music and reality programming throughout the world, including New York.

29. Upon information and belief, Vision commercially distributes the Infringing Films on behalf of and as agent of Coda throughout the United States and the world, including New York.

30. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a) and 1367. This Court has personal jurisdiction over Defendants because they (i) transact business and contract to supply goods and services in New York directly or through authorized agents, by, *inter alia*, advertising and selling the Infringing Films to New York residents, (ii) have committed tortious actions within New York by, *inter alia*, reproducing, distributing and transmitting copyrighted musical compositions, sound recordings and films to New York residents by selling the Infringing Films causing injury in New York, which acts give rise in whole or in part to the claims asserted herein, while regularly doing and soliciting business and deriving substantial revenue from goods consumed and services rendered in New York, while

expecting their acts to have consequences in New York and while deriving substantial revenue from interstate commerce.

31.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) and (d).

## FACTUAL BACKGROUND

### The Infringing Conduct

32.     Since approximately the mid-2000s, Coda has created and produced purported documentary films about some of the most popular rock bands and recordings artists of all time. Upon information and belief, Carruthers is the director of all such films.

33.     In fact, these purported "documentary" films are nothing more than a delivery system for intentionally infringed materials, such as the Content.

34.     Upon information and belief, Coda, through Vision as its agent and distributer, has offered the Infringing Films for sale, download and streaming on such online platforms as Amazon and Vimeo. Coda and/or Vision have also actively marketed the sale and other exploitation of the Infringing Films online and through other platforms.

35.     In some cases, Coda uses purposefully misleading titles for the Infringing Films to mislead consumers into believing that the Infringing Films are supported and/or controlled by the owners of the Content or the underlying recordings artists. For example, two of Coda's Infringing Films are: *The Rolling Stones – Their Satanic Majesties* (2018) and *The Rolling Stones – Big Hits* (2012) (collectively the "Rolling Stones Infringing Films"). Both "Their Satanic Majesties" and "Big Hits" are partial titles of Rolling Stones phonorecord albums.

36.     Neither Plaintiffs nor their predecessors authorized Coda to use or reproduce any of the Content in any manner or more specifically to reproduce any concert performances of musical compositions, to synchronize the musical compositions and/or sound recordings with the

7

visual components of the Infringing Films, or to exploit the Content in any way for commercial gain.

37. On or about March 26, 2019, Plaintiffs, through counsel, advised Defendants that the Infringing Films were infringing upon Plaintiffs' Content and demanded, among other things, that Defendants cease and desist from further exploitation of the Infringing Films, recall or destroy the Infringing Films and to provide an accounting with respect to all commercial exploitation of the Content by Coda and/or Vision.

38. Upon information and belief, Defendants continue to market, sell and commercially exploit the Infringing Films throughout the United States and elsewhere.

39. Defendants are sophisticated entities that are aware of their obligations under the Copyright Act to obtain the necessary authority and license to synchronize, reproduce and distribute copyrighted musical compositions, sound recordings, and films.

40. Nevertheless, Defendants have, intentionally and with reckless disregard to Plaintiffs' rights, synchronized, reproduced and distributed Plaintiffs' copyrighted musical compositions, sound recordings, and films without obtaining Plaintiffs' authorization or permission.

**FIRST CLAIM FOR RELIEF**
(By all Plaintiffs for Copyright Infringement)

41. Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through and including 40 as if fully set forth herein.

42. At all relevant times herein, Plaintiffs or their predecessors in interest own or exclusively control the copyrights to the Content, including the musical compositions, sound recordings, and/or films listed on Exhibit A, which constitute the original works of authorship subject to copyright protection under the Copyright Act, 17 U.S.C. § 101, *et seq.*, and which

8

have been duly registered in the United States Copyright Office, except for the sound recordings created before February 15, 1972.  As the lawful owners and/or exclusive distributors of the copyrights in the Content, Plaintiffs are entitled to, *inter alia*, "the exclusive rights to do and to authorize . . . and [the distribution of] copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending. . ." 17 U.S.C. § 106.  Plaintiffs also have the exclusive right to enter into (or choose not to enter into) synchronization licenses for the use of those works in timed relation with visual images.

43. Defendants, without Plaintiffs' license or authority, have synchronized Plaintiffs' musical compositions and/or sound recordings with visual images to create audio-visual works (the Infringing Films); unlawfully reproduced, transmitted and distributed the Infringing Films through online sales and on-demand streaming.  Defendants have also, without Plaintiffs' license or authority, used films owned and controlled by Plaintiffs in the Infringing Films.  Each such unauthorized use, synchronization, transmission, reproduction, distribution, and/or purported license constitutes a separate act of infringement of Plaintiffs' copyrights in and to the Content, in violation of the Copyright Act, 17 U.S.C. §§ 106(1), 106(3), and 501(a).

44. Defendants' acts of infringement were committed intentionally and in reckless disregard of Plaintiffs' rights in and to the Content, constituting willful copyright infringement.

45. As a direct and proximate result of Defendants' infringement, Plaintiffs are entitled to statutory damages under 17 U.S.C. § 504(c), in the amount of up to $150,000 for each infringement, or, at Plaintiffs' election, their actual damages together with Defendants' profits, pursuant to 17 U.S.C. § 504(b).

46. Plaintiffs are entitled to an award of their attorneys' fees and full costs, pursuant to 17 U.S.C. § 505.

**SECOND CLAIM FOR RELIEF**
(By all Plaintiffs for Secondary Copyright Infringement
as against Carruthers, Gambold & Davies)

47. Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through and including 46 as if fully set forth herein.

48. At all relevant times herein, Plaintiffs or their predecessors in interest own or exclusively control the copyrights to the Content, including the musical compositions, sound recordings, and/or films listed on Exhibit A, which constitute the original works of authorship subject to copyright protection under the Copyright Act, 17 U.S.C. § 101, *et seq.*, and which have been duly registered in the United States Copyright Office, except for the sound recordings created before February 15, 1972. As the lawful owners and/or exclusive distributors of the copyrights in the Content, Plaintiffs are entitled to, *inter alia*, "the exclusive rights to do and to authorize . . . and [the distribution of] copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending. . ." 17 U.S.C. § 106. Plaintiffs also have the exclusive right to enter into (or choose not to enter into) synchronization licenses for the use of those works in timed relation with visual images.

49. Defendants, without Plaintiffs' license or authority, have synchronized Plaintiffs' musical compositions and/or sound recordings with visual images to create audio-visual works (the Infringing Films); unlawfully reproduced, transmitted and distributed the Infringing Films through online sales and on-demand streaming. Defendants have also, without Plaintiffs' license or authority, used films owned and controlled by Plaintiffs in the Infringing Films. Each such unauthorized use, synchronization, transmission, reproduction, distribution, and/or purported license constitutes a separate act of infringement of Plaintiffs' copyrights in and to the Content, in violation of the Copyright Act, 17 U.S.C. §§ 106(1), 106(3), and 501(a).

50. Carruthers, Gambold, and Davies intentionally and knowingly induced, caused, and/or materially contributed to the infringing acts of Coda.

51. Therefore, Carruthers, Gambold, and Davies are liable for contributory copyright infringement.

52. Carruthers, Gambold, and Davies also had the right and ability to supervise and control Coda's infringing conduct and had a direct financial interest in, and profited from, Coda's infringing acts while declining to exercise a right to stop or limit them.

53. Therefore, Carruthers, Gambold, and Davies are liable for vicarious copyright infringement.

54. As a direct and proximate result of Defendants' infringement, Plaintiffs are entitled to statutory damages under 17 U.S.C. § 504(c), in the amount of up to $150,000 for each infringement, or, at Plaintiffs' election, their actual damages together with Defendants' profits, pursuant to 17 U.S.C. § 504(b).

55. Plaintiffs are entitled to an award of their attorneys' fees and full costs, pursuant to 17 U.S.C. § 505.

## THIRD CLAIM FOR RELIEF
(By AMR for New York Common Law Copyright Infringement)

56. Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through and including 55 as if fully set forth herein.

57. Defendants' unauthorized synchronization, public exploitation and dissemination of the AMR sound recordings embodying the performances of The Rolling Stones within The Rolling Stones Infringing Films with full knowledge that The Rolling Stones Infringing Films contained unlawfully obtained, copyrighted materials infringed AMR's exclusive rights to reproduce these sound recordings under New York Law.

58. Defendants' infringement of the copyrights in the AMR sound recordings was intentional, willful, and with full knowledge of AMR's copyrights.

59. The infringement of each of AMR's rights in and to each of its sound recordings which are utilized in The Rolling Stones Infringing Films constituted a separate and distinct act of common law infringement.

60. As a direct and proximate result of Defendants' infringement of AMR's copyrights and exclusive rights under common law, AMR is entitled to damages in an amount to be determined by the Court, as well as Defendants' profits.

<strong><u>FOURTH CLAIM FOR RELIEF</u></strong><br>(By all Plaintiffs for Permanent Injunction)

61. Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through and including 60 as if fully set forth herein.

62. Plaintiffs should be granted a permanent injunction barring the Defendants, their officers, agents, servants, employees and attorneys and all persons in active concert and participation with them from using any portion of the Content in connection with the promotion, advertising and/or future sales or other exploitation of the Infringing Films.

63. Plaintiffs lack an adequate remedy at law.

64. Absent the issuance of a permanent injunction, Plaintiffs will be irreparably harmed by Defendants' wrongful conduct.

**WHEREFORE,** Plaintiffs respectfully request judgment against Defendants as follows:

(a) Declaring that Defendants willfully infringed Plaintiffs' copyrights in violation of the Copyright Act, 17 U.S.C. § 101 *et seq.*, as well as New York common law.

(b) Ordering that Defendants Carruthers, Gambold, and Davies are liable for secondary copyright infringement;

(c) Permanently restraining and enjoining Defendants, and each of their respective agents, servants, employees, officers, attorneys, licensees and assigns, and all other persons in active concert or participation with Defendants, from infringing any of Plaintiffs' copyrights, including without limitation, the Content identified on Exhibit A, pursuant to 17 U.S.C. § 502.

(d) Ordering that Defendants deliver up for impounding or destruction all copies of the Infringing Films made or used in violation of Plaintiffs' exclusive rights in and to the Content, together with all tapes, film negatives, digital files or other articles or means by which such copies or films may be reproduced, as well as records documenting the manufacture, sale, or receipt of things involved in such violation, pursuant to 17 U.S.C. § 503.

(e) Awarding Plaintiffs' statutory damages pursuant to 17 U.S.C. § 504(c) in an amount of up to $150,000 per infringement, or, in the alternative and at Plaintiffs' election, awarding Plaintiffs' their actual damages together with Defendants' profits, pursuant to 17 U.S.C. § 504(b).

(f) Awarding Plaintiffs their reasonable attorneys' fees and costs of this action, pursuant to 17 U.S.C. § 505.

(g) Ordering such other and further relief as the Court deems just and proper.

Dated: New York, New York
December 30, 2019

                                  MICHAEL B. KRAMER & ASSOCIATES

                                  By: /s/ Michael B. Kramer
                                      Michael B. Kramer (MK 7071)
                                      Peter T. Salzler (PS 2610)
                                      *Attorneys for Plaintiffs*
                                      488 Madison Avenue, 11th Floor
                                      New York, New York 10022
                                      (212) 319-0304
                                      mkramer@mkramerlaw.com
                                      psalzler@mkramerlaw.com