## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

ABKCO MUSIC & RECORDS, INC.,
ABKCO MUSIC, INC., UMG RECORDINGS,
INC., UNIVERSAL - SONGS OF
POLYGRAM
INTERNATIONAL INC., POLYGRAM
PUBLISHING, INC., SONGS OF
UNIVERSAL, INC., UNIVERSAL MUSIC
CORP., and CAPITOL RECORDS, LLC,

                Plaintiffs,

    v.

CODA PUBLISHING, LTD., ROBERT KIRK
CARRUTHERS, CLARE ANNE GAMBOLD,
GWILYM MICHAEL DAVIES, and VISION
FILMS, INC.,

                Defendants.

Case No. 1:19-cv-11892

*Honorable Katherine Polk Failla*

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
## MOTION FOR SUMMARY JUDGEMENT
## AND FOR ATTORNEYS' FEES AND COSTS

Respectfully submitted,

**NIXON PEABODY, LLP**

/s/ Daniel A. Schnapp
Daniel A. Schnapp
*Attorney for Defendants*
55 W. 46th Street, Tower 46
New York, New York
(212) 940-3026
dschnapp@nixonpeabody.com

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   FACTS ................................................................................................................ 1

III.  SUMMARY JUDGMENT LEGAL STANDARD .......................................... 4

POINT I:    SUMMARY JUDGMENT SHOULD BE GRANTED  IN FAVOR OF
            DEFENDANT GAMBOLD AND DAVIES ......................................... 4

POINT II:   PLAINTIFFS LACK STANDING TO ASSERT SEVERAL OF THEIR
            CLAIMS ............................................................................................ 5

    I.    APPLICABLE LEGAL STANDARD .......................................................... 5

        A.   ABBA ..........................................................................................6
        B.   Elton John ....................................................................................9
        C.   U2.............................................................................................10
        D.   Nirvana......................................................................................11

POINT III:  THE FILMS ARE FAIR USE ................................................................ 12

    I.    APPLICABLE LEGAL STANDARD ........................................................ 13

        A.   The Purpose and Character of Defendants' Use............................14
            1.   Defendants' Films Fall Within the Statutory Types of Fair Use.....................14
            2.   The Films Are Transformative.............................................15
        B.   The Nature of the Copyrighted Works.......................................18
        C.   The Durations of the Clips of Songs Used Are Consistent with The Films'
             Transformative Purposes ............................................................19
        D.   The Films Do Not Impact the Market or Value of the Copyrighted Works ..........20

POINT IV:   DEFENDANTS ARE ENTITLED TO THEIR ATTORNEYS' FEES AND
            COSTS ............................................................................................ 21

CONCLUSION.................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adjmi v. DLT Ent. Ltd.*,
   97 F. Supp. 3d 512 (S.D.N.Y. 2015).........................................................................18

*Archives Am. Geophysical Union v. Texaco, Inc.*,
   60 F.3d 913 (2d Cir.1994)..................................................................................20, 21

*Arrow Prods., Ltd. v. The Weinstein Co.*,
   44 F.Supp.3d 359 (S.D.N.Y.2014) ...........................................................................13

*Authors Guild, Inc. v. HathiTrust*,
   755 F.3d 87 (2d Cir. 2014)...............................................................................15, 20

*Baker v. Urban Outfitters, Inc.*
   254 F. Supp. 2d 346 (S.D.N.Y. 2003)......................................................................22

*Bill Graham Archives v. Dorling Kindersley Ltd.*,
   448 F.3d 605 (2d Cir. 2006)........................................................................... *passim*

*Blanch v. Koons*,
   467 F.3d 244 (2d Cir.2006)........................................................................... *passim*

*Brown v. Netflix, Inc.*,
   855 F. App'x 61 (2d Cir. 2021) ...............................................................................14

*Campbell v. Acuff–Rose Music, Inc.*,
   510 U.S. 569 (1994).......................................................................14, 17, 18, 19

*Cariou v. Prince*,
   714 F.3d 694 (2d Cir. 2013)..........................................................................17, 18, 20

*Castle Rock Entm't, Inc. v. Carol Pub. Group, Inc.*,
   150 F.3d 132 (2d Cir. 1998)..........................................................................14, 19, 24

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)....................................................................................................4

*Crown Awards, Inc. v. Disc. Trophy & Co.*,
   564 F.Supp.2d 290 (S.D.N.Y. 2008), aff'd, 326 F. App'x 575 (2d Cir. 2009).......................22

*Davis v. Blige*,
   505 F.3d 90 (2d Cir. 2007)........................................................................... *passim*

*Davis v. Carroll*,
    937 F. Supp. 2d 390 (S.D.N.Y. 2013)............................................................................4, 19

*Fogerty v. Fantasy, Inc.*,
    510 U.S. 517 (1994)...........................................................................................................21, 22

*Gallo v. Prudential Residential Servs., Ltd. P'ship*,
    22 F.3d 1219 (2d Cir. 1994)......................................................................................................5

*Harlen Assocs. v. Vill. of Mineola*,
    273 F.3d 494 (2d Cir. 2001)......................................................................................................4

*Hofheinz v. A & E Television Networks, Inc.*,
    146 F.Supp.2d 442 (S.D.N.Y.2001)........................................................................................16

*Hofheinz v. Discovery Commc'ns, Inc.*,
    No. 00 CIV. 3802 (HB), 2001 WL 1111970 (S.D.N.Y. Sept. 20, 2001)....................14, 19, 20

*John Wiley & Sons, Inc. v. DRK Photo*,
    998 F. Supp. 2d 262 (S.D.N.Y. 2014), aff'd, 882 F.3d 394 (2d Cir. 2018)....................5, 6, 12

*Leibovitz v. Paramount Pictures Corp.*,
    137 F.3d 109 (2d Cir.1998)................................................................................................12, 17

*Leibovitz v. Paramount Pictures Corporation*,
    2000 WL 1010830 (S.D.N.Y.2000)........................................................................................19

*Matthew Bender & Co. v. W. Pub. Co.*,
    240 F.3d 116 (2d Cir. 2001).....................................................................................................22

*Maxtone–Graham v. Burtchaell*,
    803 F.2d 1253 (2d Cir.1986), cert. denied, 481 U.S. 1059 (1987) ..........................................13

*Screenlife Establishment v. Tower Video, Inc.*,
    868 F.Supp. 47 (S.D.N.Y. 1994) (Sotomayor, J.)...................................................................22

*Video-Cinema Films, Inc. v. Cable News Network, Inc.*,
    No. 98 CIV. 7128 (BSJ), 2003 WL 1701904 (S.D.N.Y. Mar. 31, 2003) ................................23

*Wright v. Warner Books, Inc.*,
    953 F.2d 731 (2d Cir. 1991)............................................................................................12, 13, 14

**Statutes**

17 U.S.C. § 106................................................................................................................................4, 5, 6

17 U.S.C. § 107................................................................................................................1, 13, 14, 15, 19

17 U.S.C. §107(2) ..............................................................................................................................18

17 U.S.C. § 107(3) ................................................................................................19

17 U.S.C. § 107(4) ................................................................................................20

17 U.S.C. § 505 .............................................................................................21, 22

28 U.S.C. §1927 ...................................................................................................21

Copyright Act ................................................................................................ *passim*

**Other Authorities**

FRCP 11 ...............................................................................................................21

FRCP 56 .................................................................................................................1

FRCP 56(c) .............................................................................................................4

FRCP 56.1 ..........................................................................................................1, 5

**Exhibits**

| Exhibit No. | Description | Bates No. |
|---|---|---|
| Exhibit 1 | Exhibit A to First Amended Complaint | N/A |
| Exhibit 2 | December 1, 2020 Deposition of Robert Carruthers | N/A |
| Exhibit 3 | December 3, 2020 Deposition of Clare Ann Gambold | N/A |
| Exhibit 4 | December 8, 2020 Deposition of Gwilym Davies | N/A |
| Exhibit 5 | December 15, 2021 Deposition of Lise Romanoff | N/A |
| Exhibit 6 | MCPS DVD 1 Licenses and DVD1 Agreement | CODA001078-098; CODA0013337 |
| Exhibit 7 | Correspondence between Vision Films and Plaintiffs, March 26-27, 2019 | CODA1059 |
| Exhibit 8 | November 30, 2020 Deposition of Jody Klein | N/A |
| Exhibit 9 | December 2, 2020 Deposition of John Ray | N/A |
| Exhibit 10 | December 7, 2020 Deposition of Don Terbush | N/A |
| Exhibit 11 | December 4, 2020, Deposition of Ed Arrow | N/A |
| Exhibit 12 | December 9, 2020 Deposition of Joy Murphy | N/A |
| Exhibit 13 | August 20, 2021 Expert Report of Barry M. Massarsky | N/A |
| Exhibit 14 | August 20, 2021 Expert Report of Michael C. Donaldson | N/A |
| Exhibit 15 | Screenshot from Copyright Office Public Catalog for the musical composition of ABBA's *The Winner Takes It All* | P00333 |
| Exhibit 16 | Non-English copyright documents listing certain ABBA titles as owned by Union A.B. and Polar Music AB. | P01723 |
| Exhibit 17 | U.S. Copyrights to certain ABBA musical compositions | P00317-P00336 |
| Exhibit 18 | Universal Music Publishing AB Mergers | P00489 |
| Exhibit 19 | ████████████████████████████ | P00517 |
| Exhibit 20 | ████████████████████████████ | P000577 |
| Exhibit 21 | ████████████████████████████ | P00538 |
| Exhibit 22 | ████████████████████████████ | P01750 |
| Exhibit 23 | ████████████████████████████ | P1838 |
| Exhibit 24 | ████████████████████████████ | P2137 |
| Exhibit 25 | ████████████████████████████ | P624 |

| Exhibit No. | Description | Bates No. |
|---|---|---|
| Exhibit 26 | ██████████████████████ | P00493 |
| Exhibit 27 | *The Rolling Stones - Satanic Majesties* Amazon Reviews | N/A |
| Exhibit 28 | *Lynyrd Skynyrd - Rock Case Studies Amazon Reviews* | N/A |
| Exhibit 29 | Screenshot from *Nirvana – The Ultimate Review* | N/A |

## I.    INTRODUCTION

Defendants Robert Kirk Carruthers ("Mr. Carruthers"), Clare Anne Gambold ("Ms. Gambold), Gwilym Michael Davies ("Mr. Davies"), Coda Publishing Ltd. ("Coda"), and Vision Films, Ltd. ("Vision"), hereby move for summary judgment dismissing Plaintiffs' Amended Complaint (Dkt. 73) pursuant to Rule 56 of the Federal Rules of Civil Procedure.

As set forth herein, Plaintiffs ABKCO Music & Records, Inc. and ABKCO Music, Inc. ("ABKCO"), UMG Recordings Inc., Universal – Songs of Polygram International Inc., Polygram publishing, Inc., Songs of Universal, Inc., Universal Music Corp., and Capitol Records, LLC ("Plaintiffs") do not have standing as a matter of law to assert many of the asserted claims in Plaintiffs' First Amended Complaint. Dkt. 73, Exhibit A; *see also* Declaration of Daniel A. Schnapp ("Schnapp Decl."), Exhibit 1(Reproducing Exhibit A).  To the extent Plaintiffs do have alleged standing, Defendants' uses of the allegedly copyrighted material are protected under 17 U.S.C. § 107 of the United States Copyright Act by Fair Use and are not infringing as a matter of law.  Ms. Gambold and Mr. Davies also move for summary judgment as a matter of law because Plaintiffs' allegations with respect to Ms. Gambold and Mr. Davies and are not supported by any record evidence.

## II.    FACTS

Defendants respectfully refer the Court to their FRCP 56.1 statement.

Plaintiffs are some of the most enormous names and corporations in the entertainment business.  Dkt. 73 at ¶¶ 6, 10, 16.  In contrast, Defendant Coda is a U.K. limited liability corporation that operates as a record label and publishing house.  Defendants' Rule 56.1 Statement ("56.1 Statement") at ¶ 1. Coda publishes and distributes educational materials, including historical documentaries about rock bands and famous musicians.  *Id.*

1

Defendant Vision is a California-based corporation that distributes independent films, including documentaries.  *Id.* at ¶ 8. Vision, pursuant to a sales agency agreement, distributed certain Coda titles on streaming platforms.  *Id.* at ¶¶ 9-10.

On March 26, 2019, Plaintiffs sent Coda and Vision a cease and desist, alleging that certain of Coda's films infringed over 100 of Plaintiffs' copyrights.  *Id.* at 13.  Vision immediately responded to Plaintiffs telling them it would immediately take down the allegedly infringing films.  *Id.* at 17.  When Vision attempted to remove the films, it found that the films had already been removed from distribution by Amazon.  *Id.* at 18.

Nonetheless, on December 30, 2019, Plaintiffs filed the instant lawsuit.  Dkt. 1.  Plaintiffs assert that 10 of Defendants' documentaries infringe 86 of Plaintiffs' copyrights. Dkt. 73 at Exhibit A; Schnapp Dec., Ex. 1.

As explained in the Expert Report of Michael C. Donaldson, the 10 documentaries identified in Exhibit A are educational films about famous bands and musicians to which fair use protections apply.  Each film consists of short clips of music followed by critique and comment by musicologists, rock historians, and narrators who have with first-hand knowledge of, or personal relationships with, the subject of the documentary. 56.1 Statement at ¶¶ 33-34.

The allegedly infringing material was licensed from the Mechanical Copyright Protection Society (MCPS) prior to the creation of the documentaries now at issue.  *Id.* at 15.  MCPS is a U.K. publishing society that licenses the music of its member-publishers and collects royalties on their behalf.  *See id.* at 15.  The licenses to use copyrighted material in connection with the documentaries at issue were granted pursuant to MCPS' DVD1 Agreement, which states that the licensee may "make audio-visual master recordings embodying" the licensed material.  *See id.* at 15.

The MCPS licenses grant licensing rights on behalf of the U.K. copyright owners. For many of the allegedly infringed works, the owners/exclusive licensees of the U.S. copyrights and the U.K. copyrights are the same, or are commonly-owned entities. *See* Schanpp Decl., Ex. 6.

At their depositions, Plaintiffs admitted that they did not know at the time of filing that the materials in the films had been licensed in the in the U.K. by MCPS. 56.1 Statement at ¶¶ 20, 26, 29.

Plaintiffs also admitted that they did not perform any fair use analyses on the films to determine if the uses fell within the Copyright Act's fair use protections. *Id.* at ¶¶ 22, 25, 28.

Plaintiffs admit that only Plaintiff has seen *any* of the films at issue, and that Plaintiff, ABKCO, admits to only having had watched two of the 10 films. *Id.* at 21. Eight of the films at issue have not been viewed by any plaintiff to this action, not even the party who alleges its copyrights were infringed by one of those eight films. *See id.* at ¶ 21, 24, 27.

For many of the allegedly infringed copyrights, Plaintiffs have also failed to prove they have standing to bring their claims. For example, documents show that Plaintiffs do not have standing to bring claims with respect to the ABBA, Elton John, and U2 copyrights. *Id.* at ¶¶ 43, 47, 52.

Plaintiffs also have not produced any evidence that the documentaries at issue had any impact on the market for the copyrighted material, nor have Plaintiffs produced evidence that the documentaries have negatively impacted the licensing market for the copyrighted material. *Id.* at ¶¶ 31-32.

Plaintiffs, however, are seeking from Defendants the statutory maximum amount for each alleged infringement and are also seeking an enhancement of the statutory maximum because of Defendants' alleged willfulness. Dkt. 73 at 13; Exhibit A; Dkt. 93 at 1 (Plaintiffs' Pre-Motion

Letter on Summary Judgment). Plaintiffs have alleged over 100 infringements and are thus seeking an award of more than $15,000,000.00 in damages. *See id.*

The films at issue, however, constitute fair use. *See* 56.1 Statement at ¶¶ 11-12; 33-34. As detailed herein, an analysis of the four statutory fair use factors shows that the use of copyrighted material in the films is protected and non-infringing under 17 U.S.C. § 107 of the Copyright Act. For these reasons, Defendants are entitled to summary judgment as a matter of law.

## III.     SUMMARY JUDGMENT LEGAL STANDARD

Federal Rule of Civil Procedure 56(c) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Davis v. Carroll,* 937 F. Supp. 2d 390, 420 (S.D.N.Y. 2013) (*citing Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986)). While the nonmoving party can defeat summary judgment by presenting evidence sufficient to create a genuine issue of material fact, it is well-established that "[m]ere speculation and conjecture [are] insufficient to preclude the granting of the motion." *Harlen Assocs. v. Vill. of Mineola,* 273 F.3d 494, 499 (2d Cir. 2001).

## POINT I:
### SUMMARY JUDGMENT SHOULD BE GRANTED
### IN FAVOR OF DEFENDANT GAMBOLD AND DAVIES

Plaintiffs have asserted claims of direct and contributory infringement against Ms. Gambold and Mr. Davies. Dkt 73 at ¶¶ 25-28, Claims I-IV. The Amended Complaint alleges that Ms. Gambold and Mr. Davies both participated in, or benefited from, the allegedly infringing acts and that Ms. Gambold and Mr. Davies "own[] an interest in Defendant Coda." *Id.* at ¶¶ 26, 28. Plaintiff has not produced any evidence that supports these allegations.

Ms. Gambold testified at deposition that she served as a secretary of Coda from March 12, 2008 to April 2, 2012, and as a director of Coda director of Coda from August 1, 2011 to December 13, 2013.  Rule 56.1 Statement at ¶¶ 3-4.   Ms. Gambold was not a director or officer of Coda during the relevant time frame of when the films were made, nor was Ms. Gambold involved in the making of the films in any capacity.  *Id.* at ¶¶ 5-6. Contrary to the Amended Complaint's assertions, Ms. Gambold holds no interest in Coda.  *See id.* at ¶¶ 5-6.

Similarly, Mr. Davies has never been an officer or registered director of Coda, nor have Plaintiffs shown that Mr. Davies has an interest in Coda.  *Id.* at ¶ 7.

Plaintiffs have not produced any evidence that establishes its claims with respect to Mr. Davies and Ms. Gambold.  For these reasons, summary judgment should be granted in their favor.  *See Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994) (holding that when no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper).

## POINT II:
## PLAINTIFFS LACK STANDING TO ASSERT SEVERAL OF THEIR CLAIMS

### I.    APPLICABLE LEGAL STANDARD

"[T]he Copyright Act authorizes only two types of claimants to sue for copyright infringement: [i] owners of copyrights, and [ii] persons who have been granted exclusive licenses by owners of copyrights."  *John Wiley & Sons, Inc. v. DRK Photo*, 998 F. Supp. 2d 262, 276 (S.D.N.Y. 2014), aff'd, 882 F.3d 394 (2d Cir. 2018) (internal quotations omitted).  "The 'exclusive rights' referenced in Section 501(b) are set out in Section 106 of the Copyright Act, and include, as pertinent to the pending claims:

the exclusive rights to do and to authorize any of the following: (1) to reproduce the copyrighted work in copies or phonorecords; . . . [and] (3) to distribute copies of phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending ….

*Id.* (citing 17 U.S.C. § 106; *Davis v. Blige*, 505 F.3d 90, 98 (2d Cir. 2007)). "There are two general categories of licenses: non-exclusive licenses, which permit licensees to use the copyrighted material and may be granted to multiple licensees; and exclusive licenses, which grant to the licensee the exclusive right—superior even to copyright owners' rights—to use the copyrighted material in a manner as specified by the license agreement." *Davis v. Blige*, 505 F.3d 90, 98 (2d Cir. 2007). "A non-exclusive license conveys no ownership interest, and the holder of a nonexclusive license may not sue others for infringement." *Id.* at 101.

Plaintiffs have not established that they are the owners or hold the exclusive rights to reproduce and distribute many of the allegedly infringed copyrights. Plaintiffs attached to their Amended Complaint a spreadsheet of, among other things, the purported owner ("content owner") of each allegedly infringed copyright. For some of the allegedly infringed works, Plaintiffs cannot establish that they are the owners or licensees of the listed works. For other works listed on Exhibit A, documentary evidence indicates that Plaintiffs are not exclusive licensees. As a result, Plaintiffs do not have standing to sue others for infringement with respect to these copyrights. *See John Wiley & Sons, Inc. v. DRK Photo*, 998 F. Supp. 2d at 276 ("[T]he Copyright Act authorizes only two types of claimants to sue for copyright infringement: [i] owners of copyrights, and [ii] persons who have been granted exclusive licenses by owners of copyrights.").

## A. ABBA

None of the plaintiffs named in the present action have established that they have standing to sue others for infringement for any of the ABBA copyrights listed in Exhibit A.

For example, Plaintiffs produced only a single document with respect to the ownership of the musical composition copyright to ABBA's *The Winner Takes It All*. 56. 1 Statement at ¶ 36. This document is a screenshot from the U.S. Copyright Office's Public Catalog and lists the Claimant of the copyright as "Artwork Music Company, Inc." *Id.* Plaintiffs did not produce any documents that demonstrate that they acquired ownership or exclusive licensing rights to this copyright from the Artwork Music Company, Inc. Plaintiffs have not therefore met their burden of establishing they have standing to bring a claim with respect to this copyright.

Exhibit A asserts that the remaining copyrights are owned by "Universal/Union Songs Musikforlag AB." Schnapp Decl., Ex. 1. The documents provided by Plaintiffs show that the copyrights to these works were originally registered to Claimant Union Songs A.B. and Polar Music AB. 56.1 1 Statement at ¶ 39. Plaintiffs have not provided evidence of the U.S. Registrations for the works having the titles, *Dancing Queen*, *Take a Chance on Me*, *Mamma Mia, Fernando*, or *Thank You for the Music*. *Id.* at ¶ 38. Only a non-English copyright document has been provided in connection with these titles with the above-listed registrants named in connection with the titles. *Id.* at ¶ 38.

7





██████████ Plaintiffs do not therefore have standing on these claims. *See Davis*, 505 F.3d at 101 ("[T]he holder of a nonexclusive license may not sue others for infringement.").

## B.  Elton John

Plaintiffs lack standing to assert infringement claims with respect to the Elton John works in Exhibit A.   Even if Plaintiffs' assertion that the Elton John copyrights are owned by Universal/Dick James Music Ltd., HST Publishing, Rouge Booze, and Big Pig Music Ltd. is true,

██████████████████████████████████████████████████████

████████████████████

Documents adduced during discovery show that ████████████████████████████

█████████████████████████████████████████████████████████

██████████████████████████ g ██ J ██ Music Publishing Limited

---

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████

████████████████ As discussed above, this license grants only *non-exclusive* rights and as a result, Plaintiffs do not have standing to bring their Elton John infringement claims. *See Davis*, 505 F.3d at 101 ("[T]he holder of a nonexclusive license may not sue others for infringement.").

### C. U2

Plaintiffs lack standing to bring their U2 infringement claims because they are not the owners or exclusive licensees of the copyrights at issue. ████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████

██████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████ Plaintiffs do not therefore have standing to bring these claims. *See Davis*, 505 F.3d at 101 ("[T]he holder of a nonexclusive license may not sue others for infringement.").

10

\* \* \* \*

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████

### D. Nirvana

Plaintiffs allege that the documentary *Nirvana – The Ultimate Review* infringes Plaintiffs' copyright to the master recording of "Smells Like Teen Spirit."  The film, however, uses clips from a live performance by Nirvana on Saturday Night Live.  56.1 Statement at ¶ 54.  The film clip in the documentaries is accompanied by the on-screen text:

> Saturday Night Live' Exec. Producer: Lorne Michaels, Producer: James Dwoney Director: Dave Wilson ©1992 National Broadcasting Company Inc. Smells Like Teen Spirit (Cobain/Nirvana) The End Of Music (BMI)/EMI Virgin Music Ltd. The original studio sound recording first appeared on the album "Nevermind" Released by The David Geffen Company in 1991.

> Schnapp Decl., Ex. 29.

The copyright for material allegedly infringed in *Nirvana – The Ultimate Review* does not belong to any of Plaintiffs.  *See id.*  Plaintiffs have not produced any evidence that demonstrates that they own the copyright to the underlying musical composition, nor have they produced any evidence that they hold an exclusive license to this material.  Plaintiffs do not therefore have standing to assert this claim of copyright infringement.

---

[3] ████████████████████████████████████████████
██████████████████████████████████

Plaintiffs do not have standing to bring copyright infringement claims for the ABBA, Elton John, U2, and Nirvana works listed in Exhibit A because they are neither the owners nor exclusive licensees of these copyrights. *See John Wiley & Sons, Inc. v. DRK Photo*, 998 F. Supp. 2d at 276 ("[T]he Copyright Act authorizes only two types of claimants to sue for copyright infringement: [i] owners of copyrights, and [ii] persons who have been granted exclusive licenses by owners of copyrights.").

For these reasons, Plaintiffs lack standing to bring more than half - 62 – of their infringement claims. Thus, summary judgment should be granted in Defendants' favor with respect to ABBA, Elton John, U2, and Nirvana claims because Plaintiffs cannot establish that they own or are the exclusive licensees of these copyrights. *See Davis*, 505 F.3d at 101 ("[T]he holder of a nonexclusive license may not sue others for infringement.").

**POINT III:**
**THE FILMS ARE FAIR USE**

Defendants are also entitled to summary judgment because, even if Plaintiffs do have standing to bring their claims, the uses in the films are protected fair use under the Copyright Act.

Although fair use is a mixed question of fact and law, "courts in this Circuit have resolved fair use determinations at the summary judgment stage." *Wright v. Warner Books, Inc.*, 953 F.2d 731, 735 (2d Cir. 1991); *see e.g.*, *Blanch v. Koons*, 467 F.3d 244, 249–50 (2d Cir.2006) (affirming the district court's grant of summary judgment on fair use grounds where district court reached that conclusion by comparing the original and potentially infringing paintings); *Leibovitz v. Paramount Pictures Corp.*, 137 F.3d 109 (2d Cir.1998) (affirming district court's grant of summary judgment on fair use grounds where district court reached that conclusion by comparing original photograph to potentially infringing advertisement); *Arrow Prods., Ltd. v. The Weinstein Co.*, 44 F.Supp.3d 359, 366–73 (S.D.N.Y.2014) (finding fair use based on a review of, and subsequent comparison

between, two films); *Effie Film, LLC v. Murphy, 9*32 F. Supp. 2d 538, 545–553 (S.D.N.Y. 2013), aff'd, 564 F. App'x 631 (2d Cir. 2014), 932 F.Supp.2d at (granting motion on the pleadings based upon a detailed review of two screenplays depicting the same historical events).

"'[T]he mere fact that a determination of the fair use question requires an examination of the specific facts of each case does not necessarily mean that in each case involving fair use there are factual issues *to be tried*.'" *Wright,* 953 F.2d at 735 (quoting *Maxtone–Graham v. Burtchaell*, 803 F.2d 1253, 1258 (2d Cir.1986), cert. denied, 481 U.S. 1059 (1987) (emphasis in original)).

## I.    APPLICABLE LEGAL STANDARD

The Copyright Act provides four statutory factors that courts must consider in analyzing a fair use defense: (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work." *Blanch v. Koons*, 467 F.3d at 250.  "In addition, the structure of § 107 is significant. The section is entitled 'Limitations on exclusive rights: Fair use,' and the opening sentence makes clear that a 'fair use ... is not an infringement of copyright.' The same sentence furnishes examples of broad categories of fair use: 'criticism, comment, news reporting, teaching ...,  scholarship or research.' The section then defines four non-exclusive factors to be considered in determining whether a particular use is fair." *New Era Publications Int'l, ApS v. Carol Pub*. Grp., 904 F.2d 152, 155 (2d Cir. 1990).

Defendants' uses fall within the statutory categories of fair use. Further, an analysis of each of the four statutory factors weighs in favor of finding that the use of the allegedly copyrighted material in the documentaries constitutes fair use.  *Id.*, 17 U.S.C. § 107.

13

### A.  The Purpose and Character of Defendants' Use

The first statutory factor in a fair use analysis, the "purpose and character of the use," is the "heart of the fair use inquiry."  *Blanch v. Koons*, 467 F.3d at 251.  In evaluating this factor, courts must look to whether the use "adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message.'"  *Id.* (quoting *Campbell v. Acuff–Rose Music, Inc.*, 510 U.S. 569, 579 (1994)).   Where the new work "'adds value to the original'" or "the original work is used as raw material, transformed in the creation of new information, new aesthetics, new insights and understandings—this is the very type of activity that the fair use doctrine intends to protect for the enrichment of society.'"  *Id.* at 252 (quoting *Castle Rock Entm't, Inc. v. Carol Pub. Group, Inc*., 150 F.3d 132, 142 (2d Cir. 1998)).

### 1.    Defendants' Films Fall Within the Statutory Types of Fair Use

The Copyright Act "provides that use of copyrighted materials for "purposes such as criticism, ... scholarship, or research, is not an infringement of copyright."  *Id.* at 156.  While not an operative rule, courts have held that if a defendants' use "falls into one of these categories [i.e., criticism, scholarship or research], assessment of the first fair use factor should be at an end."  *Wright v. Warner Books, Inc.*, 953 F.2d 731, 736–37 (2d Cir. 1991) (quoting *New Era Publications Int'l, ApS v. Carol Publishing Group* (*New Era* II), 904 F.2d 152, 156 (2d Cir.) cert. denied, 498 U.S. 921 (1990)).   "Documentaries and biographies fall within the protected categories of § 107, and are entitled to the presumption the use of the copyrighted material is fair."  *Hofheinz v. Discovery Commc'ns, Inc.*, No. 00 CIV. 3802 (HB), 2001 WL 1111970, at *3 (S.D.N.Y. Sept. 20, 2001) (Finding defendant's use of several clips from plaintiff's films in defendant's documentary to be fair use); *see also Brown v. Netflix, Inc.*, 855 F. App'x 61, 62 (2d Cir. 2021) (finding that a burlesque documentary fits within those uses identified by § 107).

14

Defendants' films are documentaries and fall within the statutory categories of § 107 illustrative of fair use. Defendants' Expert, Michael C. Donaldson, opined that Defendants' "films are clearly and indisputably documentaries" under any definition, and that "consistent with documentary films that fairly use an artists' work in their storytelling, expert testimony from a variety of narrators discusses the musicality of the artists' songs, the nuances of the lyrics and the position of the songs in the artists' careers." 56.1 Statement at ¶ 33; *see also* Schnapp Decl., Ex. 14 at 12. Mr. Donaldson also opined that," [t]he Documentaries in this case – from start to finish are - commentary, critique, criticism and a musically documented review of the amazing careers and the music of each artist." *Id*. Accordingly, the purpose and character of Defendants' use on this basis alone weighs heavily in favor of a fair use finding. *See New Era Publications Int'l, ApS*, 904 F.2d at 156 ("[I]f a book falls into one of these categories [i.e., criticism, scholarship or research], assessment of the first fair use factor should be at an end." (internal quotations omitted)).

### 2.    The Films Are Transformative

"A use is transformative if it does something more than repackage or republish the original copyrighted work." *Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87, 96 (2d Cir. 2014). As explained *supra*, the films are documentaries that explore time periods in, and the legacies of, rock bands and musicians. The documentaries offer factual, historical, and scholarly narrative from people directly affiliated with the subjects of these documentaries, and they offer commentary and critique from rock historians. The use of excerpts of songs to illustrate the points being made by the documentaries' narrators is transformative and weighs in favor of finding fair use. Use of the copyrighted material to represent significant events in the artists' careers and illustrate and enhance viewers' understandings the narrators' critiques and commentary is "a purpose separate and distinct from the original artistic" purpose for which the

songs were created.  *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 610 (2d Cir. 2006) (holding that unauthorized inclusion of copyrighted images in biographical Grateful Dead book was protected by fair use because the use "enhances the reader's understanding of the biographical text . . .[or] serve as historical artifacts graphically representing the fact of significant Grateful Dead concert events . . . We conclude that both types of uses fulfill DK's transformative purpose of enhancing the biographical information in *Illustrated Trip*, a purpose separate and distinct from the original artistic and promotional purpose for which the images were created"); *see also Hofheinz v. A & E Television Networks, Inc*., 146 F.Supp.2d 442, 446–47 (S.D.N.Y.2001) (ruling that unauthorized inclusion of copyrighted film clips in actor's biographical film was protected fair use because the biography "was not shown to recreate the creative expression reposing in plaintiff's [copyrighted] film, [but] for the transformative purpose of enabling the viewer to understand the actor's modest beginnings in the film business").

The transformative use of the material is visually represented in the charts accompanying Mr. Donaldson's Report.  *See generally*, Schnapp Decl., Ex. 14, Appendix A.  For example, and referring to Mr. Donaldson's chart corresponding to *The Rolling Stones-Big Hits*, for each song excerpt used, there is accompanying commentary, and together, the effect is to chronicle the history of the Rolling Stones' in relation to their "greatest hits."  *Id*.  With respect to the first song, "I (Can't Get No) Satisfaction," the song plays at higher volume for .08 seconds clip followed by a drastic decrease in volume where the narrator explains over nearly inaudible sound that the period in which the song was first receiving success aligned with the Rolling Stones' international debut.  *Id.*  The song is then again played at higher, audible, volume for 30 seconds, following again by a rapid decrease in music volume, and is accompanied by narration explaining that the album on which the song appeared dictated how the band was perceived

16

during mid-to-late sixties.  *Id.*  Other narrations and commentary discuss influences on the

Stones' music.  For example, the narrators discuss that in the song "Paint it Black," a sitar is used

because at the time, sitars were in vogue and had recently been used by The Beatles.  *Id.*

     Courts evaluate the transformative nature of work through the lens of a reasonable

observer and "examine how the artworks may 'reasonably be perceived' in order to assess their

transformative nature."  *Cariou v. Prince*, 714 F.3d 694, 704 (2d Cir. 2013) (quoting *Campbell v.

Acuff–Rose Music, Inc.*, 510 U.S. 569, 582 (1994)); *see also Leibovitz v. Paramount Pictures

Corp.*, 137 F.3d 109, 113–14 (2d Cir.1998) (evaluating parodic nature of advertisement in light

of how it "may reasonably be perceived").  Plaintiffs' Exhibit A provides Amazon.com web

links to where the films were once available for viewing and incorporates evidence concerning

how these very films are "reasonably perceived" by the viewers who have watched them. With

respect to *The Rolling Stones – Their Satanic Majesties*, Reviewer Frankenformer writes, "Great

commentary from men who were contemporaries of The Stones just before their decadent '70's."

Schnapp Decl., Exhibit 27 (Amazon Reviews for *Rolling Stones – Their Satantic Majesties*

documentary).  Reviewer Kelly Peterson writes, "There was some insightful commentary here."

*Id.*  All of the reviews, whether positive or negative, concern the *commentary and critique* of the

films.  *See id*.  The other films, to the extent they have been reviewed, contain similar

observations and perceptions, and focus on the commentary and criticism, as well.  For example,

at the Amazon.com link in Exhibit A for *Lynyrd Skynyrd: Rock Case Studies*, Reviewer John

Werner writes, "I think this film, as pedestrian as it is, is pretty spot-on with the observations and

the inserted video . . . What I respect is the honest comments by rock talking heads that actually

have a connection and respect for Ronnie and The Guys." Schnapp Decl., Exhibit 28 (Amazon

Reviews for *Lynyrd Skynyrd – Rock Case Studies* documentary).  Reviewer Joseph complains

that the film is "about 1 hrs worth of very subjective opinions from mostly 3 reviewers." *Id.*
Reasonable observers perceive the content to be transformative, which supports a finding of fair
use. *See Cariou*, 714 F.3d at 694.

The use of the material in the films is not for used for the same expressive and
entertaining purpose for which it was originally created. The material is instead used for the
transformative purpose of illustrating the artist's and bands' legacies and enhancing viewers'
understanding of where these artists fit within rock history.  Each of the films uses the works in
the same transformative manner.  An analysis of the first fair use factor, which is the "heart of
the fair use inquiry," supports a finding that the films are protected fair use. *Blanch v. Koons,*
467 F.3d at 251.

### B.  The Nature of the Copyrighted Works

The second fair use factor looks to "the nature of the copyrighted work." 17 U.S.C.
§107(2). This factor is "'of limited usefulness where,' as here, 'the creative work of art is being
used for a transformative purpose.'"  *Cariou*, 714 F.3d at 710 (quoting *Bill Graham Archives v.
Dorling Kindersley Ltd.*, 448 F.3d 605, 612 (2d Cir. 2006)); *Blanch v. Koons*, 467 F.3d 244, 257
(2d Cir. 2006).  "This factor calls for recognition that some works are closer to the core of
intended copyright protection than others, with the consequence that fair use is more difficult to
establish when the former works are copied."  *Campbell* at 586. However, when a work makes
use of "publicly known, expressive works," "[t]o quote the Supreme Court, the second factor is
not "ever likely to help much in separating the fair use sheep from the infringing goats."  *Adjmi
v. DLT Ent. Ltd.*, 97 F. Supp. 3d 512, 532 (S.D.N.Y. 2015); quoting *Campbell*, 510 U.S. at 586.
Although this factor appears to favor Plaintiffs, as it always will in a case where publicly known,
expressive works are used, "courts have recognized that "this factor may be of less (or even of
no) importance when assessed in the context of certain transformative uses." *Bill Graham*

18

*Archives, LLC.*, 386 F. Supp. 2d at 330 (quoting *Castle Rock Entertainment, Inc., v. Carol Publishing Group, Inc.,* 150 F.3d 132, 144 (2d Cir.1998)); *see also Leibovitz v. Paramount Pictures Corporation*, 2000 WL 1010830, *4 (S.D.N.Y.2000) ("It is well established that the second factor—the nature of the copyrighted work is not very important to the fair use analysis.").

### C.  The Durations of the Clips of Songs Used Are Consistent with The Films' Transformative Purposes

The third fair use factor examines "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." 17 U.S.C. § 107(3).  Courts must ask "whether the quantity and value of the materials used are reasonable in relation to the purpose of the copying." *Blanch*, 467 F.3d at 257.  A secondary user "must" be permitted "to 'conjure up' at least enough of the original" work to accomplish his transformative purpose. *Campbell*, 510 U.S. at 588. The principle underlying the third factor is that "fragmentary copying is more likely to have a transformative purpose that wholesale copying." *Hofheinz v. Discovery Commc'ns, Inc.*, No. 00 CIV. 3802 (HB), 2001 WL 1111970, at *5 (S.D.N.Y. Sept. 20, 2001) (quoting *Davis*, 246 F.3d at 175).

The films use portions of the works in amount no more than was necessary to support the commentary and critique and/or mark a historically significant time in the subject artist's career. Mr. Donaldson's Report and accompanying charts provide analysis in granular detail on the amount of each use in relation to its transformative purpose. Mr. Donaldson opined that but for a few outliers among the over 100 songs listed in Exhibit A, "the length of the song used is reasonably appropriate to the points being made."  Schnapp Decl., Ex. 14 at 15.

These uses are consistent with use protected by 17 U.S.C. § 107.  *See Bill Graham Archives* v. 448 F.3d at 613 (2d Cir. 2006) (holding that defendant's unauthorized reproduction

19

of copyrighted images in their entirety, but at reduced size and quality, furthered transformative purpose of ensuring the reader's recognition of the images as historical artifacts of Grateful Dead concerts and the third factor did not weigh against fair use); *Hofheinz v. Discovery Commc'ns, Inc.*, 2001 WL 1111970, at *5 (finding third factor favored defendant's unauthorized use of film clips in documentary where clips were used for the transformative purpose of enriching commentary).

For these reasons, the third factor in the fair use analysis weighs in favor of Defendants.

### D.  The Films Do Not Impact the Market or Value of the Copyrighted Works

The fourth fair use factor looks to "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4). This factor "is concerned with only one type of economic injury to a copyright holder: the harm that results because the secondary use serves as a substitute for the original." *Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87, 99 (2d Cir. 2014).  Courts have therefore held that the fourth factor only disfavors fair use when "the secondary use usurps the market for the original work.'" *Cariou*, 714 F.3d at 708 (quoting Blanch, 467 F.3d at 258).  As discussed *supra*, the films use fragments of songs, many of which are also spoken over. The films are transformative and do not usurp the market for Rolling Stones or Lynyrd Skynyrd music.

With respect to the impact on the market for licensing the materials, "[i]t is indisputable that, as a general matter, a copyright holder is entitled to demand a royalty for licensing others to use its copyrighted work, and that the impact on potential licensing revenues is a proper subject for consideration in assessing the fourth factor." *Bill Graham*, 448 F.3d at 605 (quoting *Archives Am. Geophysical Union v. Texaco, Inc.*, 60 F.3d 913, 929 (2d Cir.1994)).  Courts have noted, however, that "'were a court automatically to conclude in every case that potential licensing revenues were impermissibly impaired simply because the secondary user did not pay a fee for

the right to engage in the use, the fourth fair use factor would always favor the copyright holder.'"  *Id.* (quoting *Texaco*, 60 F.3d at 929).

Plaintiffs have not provided any evidence that the market for the original works has been harmed, nor have Plaintiffs provided any evidence that their potential licensing revenues have been harmed.

An analysis of each of the fair use factors demonstrates that the use of the copyrighted material purportedly owned by Plaintiffs falls squarely within the protected fair use under the Copyright Act.  Fair use is a full defense to copyright infringement and as such, Defendants have not infringed any copyrighted material.  Defendants are therefore entitled to summary judgment on all claims as a matter of law.

## POINT IV:
## DEFENDANTS ARE ENTITLED TO THEIR ATTORNEYS' FEES AND COSTS

Should the Court find that Defendants are entitled to summary judgment, Defendants should be awarded attorney's fees as a "prevailing party" under FRCP 11, 28 U.S.C. §1927, or the Court's inherent powers.

First, under the Copyright Act, "the prevailing party" is eligible for an award of attorney's fees. 17 U.S.C. § 505; *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994) (remarking that, under section 505, "[p]revailing plaintiffs and prevailing defendants are to be treated alike, but attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion"). The Court should use its discretion to grant an award of attorney's fees. *Polsby v. St. Martin's Press*, Inc., 8 F. App'x 90, 92 (2d Cir. 2001) (awarding prevailing defendant fees).

In determining whether attorney's fees should be awarded, there is no precise rule or standard, but courts look to a non-exhaustive list of factors including "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the

21

need in particular circumstances to advance considerations of compensation and deterrence."

*Fogerty,* 510 U.S. at 534 n. 19, 114 S.Ct. 1023; *See Screenlife Establishment v. Tower Video,*

*Inc.,* 868 F.Supp. 47, 52 (S.D.N.Y. 1994) (Sotomayor, J.) (holding that prevailing party may

obtain attorneys' fees "pursuant to 17 U.S.C. § 505, once the court finds that the plaintiff's claim

was objectively unreasonable; bad faith or frivolousness is not a prerequisite to an award of

fees."); *see also Crown Awards, Inc. v. Disc. Trophy & Co.,* 564 F.Supp.2d 290, 294 (S.D.N.Y.

2008), aff'd, 326 F. App'x 575 (2d Cir. 2009); *see also Matthew Bender & Co. v. W. Pub. Co.,*

240 F.3d 116, 121 (2d Cir. 2001) (same).

    Even defendants who admitted infringement were able to collect attorney's fees when a

plaintiff sought excessive damages. *Baker v. Urban Outfitters, Inc.* 254 F. Supp. 2d 346

(S.D.N.Y. 2003), aff'd unpub., 249 Fed. Appx. 845 (2d Cir. 2007). In *Baker,* the plaintiff sought

damages in the amount of $260,000, despite the fact that defendant earned gross profits of

$3,896 and plaintiff's past practice was to license his photographs for less than $100.  The Court

therefore granted partial summary judgment to limit damages to a maximum of $3,896. Plaintiff

continued to be "contumacious and disruptive" and the judge determined that plaintiff had

brought suit for improper motivation. The Court awarded defendant almost $400,000 in fees

under the Copyright Act, plus additional sums on other bases.

    Here, Plaintiffs have sought excessive damages, and their motivation for bringing this

suit appears to be for the purpose of chilling fair use.  In *Fogerty,* 510 U.S. at 527, the Supreme

Court explained that "copyright law ultimately serves the purpose of enriching the general public

through access to creative works" and stated that:

> defendants who seek to advance a variety of meritorious copyright defenses
> should be encouraged to litigate them to the same extent that plaintiffs are
> encouraged to litigate meritorious claims of infringement ... Thus, a successful
> defense of a copyright infringement action may further the policies of the

> Copyright Act every bit as much as a successful prosecution of an infringement
> claim by the holder of a copyright.

Fees are appropriate in this case to "deter future copyright owners from using the threat of

litigation to chill other fair uses.  To hold otherwise would diminish any incentive for defendants

to incur the often hefty costs of litigation to defend the fair use doctrine." *Video-Cinema Films,*

*Inc. v. Cable News Network, Inc*., No. 98 CIV. 7128 (BSJ), 2003 WL 1701904, at *5 (S.D.N.Y.

Mar. 31, 2003).

Plaintiffs are sophisticated litigants. Abkco has brought 591 actions against defendants,

UMG Recordings, Inc. has brought more than 5,400 actions against defendants, Capitol Records

has brought 4,971 causes of action against defendants, and the "UMPG" plaintiffs have

collectively brought 797 actions against defendants. Plaintiffs made little or no effort to

determine whether Defendants' documentary films were protected by fair use.  In fact, UMG,

Recordings, Inc., when sued by the Estate of James Oscar Smith in for copyright infringement in

this district, successfully asserted a fair use defense. *Est. of Smith v. Cash Money* Recs., Inc.,

253 F. Supp. 3d 737, 752 (S.D.N.Y. 2017) ("This Court finds that any liability for Defendants'

appropriation of JSR is barred by the doctrine of fair use.").  Regardless, Plaintiffs now demand

from Defendants the statutory maximum damages; $150,000.00 per alleged infringements.

Plaintiffs are demanding damages in excess of $15 million dollars.

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

████████████████████████ This is objectively unreasonable.

Further, the evidence makes clear that Plaintiffs use their alleged copyrights to impede,

not promote, the development of creative works for public access.  Mr. Massarsky opined that "it

is doubtful that Defendants would have been viewed as a credible licensee" because Plaintiffs "typically want to negotiate license fees only with would-be licensees that have the financial wherewithal to credibly ensure that they can pay the license fee." *Id.* at ¶ 36. ███████████ ████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████ These fees could be cost-prohibitive to nearly all parties looking to obtain licenses for transformative uses. "[C]opyright owners may not preempt exploitation of transformative markets." *Bill Graham Archives*, 448 F.3d at 615 (quoting *Castle Rock*, 150 F.3d at 146 n. 11).

Despite demanding millions in damages, Plaintiffs testified at deposition they did not confirm their ownership and/or standing prior to bringing several of their claims. *See, e.g.,* Schnapp Decl., Ex. 10 ("Terbush Dep.") at 19:20-20:24. As this Court is aware, Plaintiff's Amended Complaint was necessary because Plaintiff could not proceed with some of its infringement claims unless it joined Capitol Records, LLC to this action. Plaintiffs were also forced to drop one of their infringement claims because, through discovery, they learned that that they did not own or exclusively license the copyright at issue. As discussed *supra*, Plaintiffs do not have standing to assert more than half of their claims. Plaintiffs appear to have inflated their purported damages by approximately $9.3M.

Lastly, at the time of filing this action, Plaintiffs had not reviewed at least eight of the allegedly infringing films to confirm that copyright infringement had even taken place. 56.1 Statement at ¶¶ 21, 24, 27. Further, nearly a year into this case, at the time of depositions, Plaintiffs *still* had not reviewed eight of the ten films at issue. *Id.* Plaintiffs filed their claims without first confirming their standing and without having reviewed the allegedly infringing

material to confirm that infringements had even occurred.  Defendants should be awarded their costs and attorneys' fees for these additional reasons.

## CONCLUSION

Plaintiffs have failed to establish that they have standing to bring several of the claims. To the extent that Plaintiffs do have standing, Plaintiffs did not perform a fair use analysis prior to bringing this action, and in any event, fair use is a complete defense to many of Plaintiffs' claims.

Accordingly, summary judgment should be granted for Defendants as a matter of law and Defendants should be awarded their attorneys' fees and costs.

Respectfully submitted,

**NIXON PEABODY, LLP**

/s/ Daniel A. Schnapp
Daniel A. Schnapp
*Attorney for Defendants*
55 W. 46th Street, Tower 46
New York, New York 10036
(212) 940-3026
dschnapp@nixonpeabody.com

25