UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ABKCO MUSIC & RECORDS, INC.; ABKCO
MUSIC, INC.; UMG RECORDINGS, INC.;
UNIVERSAL-SONGS OF POLYGRAM
INTERNATIONAL, INC.; POLYGRAM
PUBLISHING, INC.; SONGS OF
UNIVERSAL, INC.; UNIVERSAL MUSIC
CORP.; and CAPITOL RECORDS, LLC,

                Plaintiffs,

                   -v.-

CODA PUBLISHING, LTD., ROBERT KIRK
CARRUTHERS, CLARE ANNE GAMBOLD,
GWILYM MICHAEL DAVIES, and VISION
FILMS, INC.,

                Defendants.

19 Civ. 11892 (KPF)

**OPINION AND ORDER**

---

KATHERINE POLK FAILLA, District Judge:

This copyright infringement case arises out of the commercial distribution of several documentary films involving some of the biggest acts in modern music, including The Rolling Stones, Nirvana, U2, the Red Hot Chili Peppers, and Elton John.  The instant dispute, however, implicates something far more prosaic: litigants' obligations to make timely discovery disclosures.

After the parties briefed cross-motions for summary judgment and motions to preclude expert testimony, Defendants Coda Publishing, Ltd., Robert Kirk Carruthers, Clare Anne Gambold, Gwilym Michael Davies, and Vision Films, Inc. moved for discovery sanctions pursuant to Federal Rule of Civil Procedure 37 against Plaintiffs ABKCO Music & Records, Inc.; ABKCO Music, Inc.; UMG Recordings, Inc.; Universal-Songs of Polygram International,

Inc.; Polygram Publishing, Inc.; Songs of Universal, Inc.; Universal Music Corp.; and Capitol Records, LLC.  Defendants contend that Plaintiffs failed to timely produce records demonstrating their ownership of certain of the intellectual property at issue in the case, and that Plaintiffs' breach of their discovery obligations warrants the dismissal of the case or, at minimum, the preclusion of the untimely ownership records.  Plaintiffs do not dispute that they violated their discovery obligations or that sanctions are appropriate, but argue that their violation was unintentional and that any sanctions should be limited to the reopening of fact discovery and the scheduling of supplemental summary judgment briefing.

    For the reasons that follow, the Court grants in part Defendants' motion for discovery sanctions.  The Court will not dismiss the case or preclude the ownership records, but will reopen fact discovery and allow Defendants to file a supplemental brief in support of their motion for summary judgment.  The Court will also order Plaintiffs to pay the reasonable expenses Defendants incurred in litigating their motion for discovery sanctions and in remedying Plaintiffs' discovery violation.  Lastly, the Court will defer decision on the parties' pending cross-motions for summary judgment and motions to preclude expert testimony until after Defendants have been given an opportunity to file supplemental briefing.

**BACKGROUND**[1]

Plaintiffs comprise several music recording and distribution companies that have "entire portions of their business[es] devoted to the licensing of their intellectual property[.]" (Pl. 56.1 ¶ 17). Defendants create and distribute documentary films depicting famous recording artists and rock bands throughout the world, including in New York. (*Id.* at ¶¶ 23-29).

In this case, Plaintiffs allege that Defendants violated their intellectual property rights by producing several documentary films that included recordings of performances by musical acts such as Lynyrd Skynyrd, The Rolling Stones, ABBA, U2, Nirvana, Elton John, and the Red Hot Chili Peppers. (Pl. 56.1 ¶¶ 19-20). Plaintiffs assert that they own the copyrights in these musical compositions and video recordings of the performances, and allege that Defendants did not have permission to exploit them. (*Id.* at ¶¶ 20-21, 56-57).

Plaintiffs' ownership rights have been a hotly contested issue in this litigation since Plaintiffs filed the initial Complaint in December 2019. (*See* Dkt. #1).[2] On January 31, 2020, Defendants filed a letter motion requesting

---

[1] The facts set forth in this Opinion are drawn primarily from the parties' statements of undisputed material facts submitted pursuant to Local Civil Rule 56.1. The Court cites to these statements using the convention "Pl. 56.1" (Dkt. #133) and "Def. 56.1" (Dkt. #123). Citations to a party's Rule 56.1 Statement incorporate by reference the documents cited therein. The Court also draws facts related to the parties' exchange of discovery from their memoranda of law submitted in connection with Defendants' motion for discovery sanctions. For ease of reference, the Court refers to Defendants' memorandum of law in support of their motion for discovery sanctions as "Def. Br." (Dkt. #214); Plaintiffs' memorandum of law in opposition to Defendants' motion as "Pl. Opp." (Dkt. #221); and Defendants' reply memorandum of law as "Def. Reply" (Dkt. #222). The Court's citations to the parties' briefing include, as appropriate, any documents or materials that are referenced in the cited pages.

[2] Plaintiffs filed an Amended Complaint, the operative pleading in this case, on March 5, 2021. (Dkt. #73).

3

an order directing Plaintiffs to file a more definite statement pursuant to Rule 12(e) of the Federal Rules of Civil Procedure. (Dkt. #34). Defendants argued that the Complaint was "vague and ambiguous" as to issues that included, but were not limited to, Plaintiffs' ownership and registration of the copyrights at issue in the case. (*Id.* at 1). The Court ultimately denied Defendants' motion (Dkt. #41), and issued a Civil Case Management Plan and Scheduling Order (the "CMP") that set a fact discovery deadline of September 21, 2020 (Dkt. #51).

During discovery, Defendants sought the agreements purporting to establish Plaintiffs' ownership interests in the works at issue in the case. On June 12, 2020, Defendants requested several categories of documents from Plaintiffs, including "[a]ll documents or communications relating to [Plaintiffs'] purported claim of ownership of exclusive rights in each of the" compositions and recordings described in the Complaint. (Def. Br. 3). That same day, Defendants also requested that Plaintiffs "[i]dentify the existence, location, custodian, and general description of any and all documents relevant to the claims asserted in the Complaint or to the underlying subject matter of this Action, including without limitation pertinent agreements[.]" (*Id.* at 4). In the several productions made between August and November 2020, Plaintiffs disclosed at least 718 documents relevant to their ownership claims. (Pl. Opp. 6).

The Court later extended the fact discovery deadline to December 21, 2020 (Dkt. #61), and the parties conducted depositions in late November (Def. Br. 4). As relevant here, Defendants deposed Jody Klein, Plaintiffs' designated

representative pursuant to Federal Rule of Civil Procedure 30(b)(6), on November 30, 2020. (*Id.*).[3] Defendants briefly questioned Klein on the assignments that culminated in Plaintiffs holding the ownership interest in certain Rolling Stones compositions. (*Id.*). In response to a question about whether there were documents evidencing these assignments, Klein testified that "there is a 60-year history of documents relating to the Jagger/Richards compositions [that is] well documented, and so I just don't know as I sit here today what the document is that you are looking for." (*Id.* at 5).[4]

At least one of the documents at issue here was the subject of some discussion in Spring 2021. In a letter sent to Plaintiffs' counsel, for instance, Defendants' former counsel referenced an "Exclusive Songwriters Agreement" dated September 1, 1966, that forms a critical link in the chain of ownership underlying Plaintiffs' claim to an exclusive ownership interest in compositions by The Rolling Stones. (Pl. Opp. 7). Similarly, in several letters sent between May and June 2021, Defendant Carruthers referenced the same Songwriters Agreement and described it as "an undisclosed contract[.]" (*Id.* at 8).

Plaintiffs, for their part, sought to avoid the need for further litigation as to their ownership interests by proposing a stipulation to Defendants in July

---

[3] Rule 30(b)(6) provides that upon receiving a subpoena, an organization "must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf[.]" Fed. R. Civ. P. 30(b)(6).

[4] At the risk of stating the obvious, Mick Jagger and Keith Richards are musicians, songwriters, and co-founders of The Rolling Stones.

2021. (Def. Br. 8; Pl. Opp. 9). In a letter accompanying the proposed stipulation, Plaintiffs' counsel wrote that

> [w]hile [the parties] both understand that it is Plaintiffs' obligation to prove chain of title, in this situation the Defendants have not raised one specific issue as to the ownership/control of the works at issue. This request is made in an effort to narrow the areas of dispute and to avoid unnecessarily inundating the Court with hundreds, if not thousands, of copyright and ownership transfer documents.

(Def. Br. 8). Defendants refused to sign the stipulation, contesting Plaintiffs' claim that their ownership rights were not in dispute and asserting that Plaintiffs lacked standing because they did not hold the copyrights. (*Id.* at n.4).

In late 2021, after the close of discovery, the parties filed cross-motions for summary judgment. Plaintiffs filed their opening motion and supporting papers on September 29, 2021. (*See* Dkt. #108 (notice of motion)). There is no dispute that Plaintiffs included ten sets of documents purporting to establish their ownership interest in certain Rolling Stones copyright certificates for the first time in the declaration of William Pittenger submitted in support of Plaintiffs' motion for summary judgment (the "Pittenger Documents"). (Def. Br. 5; Pl. Opp. 3; *see also* Pittenger Decl. (Dkt. #219) at ¶ 5 (identifying the documents)). The Pittenger Documents were not disclosed in response to Defendants' requests for documents in June 2020, or prior to Klein's deposition, or at any other point during the litigation.

Following a substitution in counsel (*see* Dkt. #159), Defendants filed a pre-motion letter requesting a conference to address their anticipated motion for discovery sanctions on March 4, 2022 (Dkt. #205). After the Court held a

pre-motion conference (*see* Dkt. #212 (transcript of Mar. 24, 2022 conference)), Defendants filed their opening motion for discovery sanctions and supporting papers on April 8, 2022 (Dkt. #214-216).[5] Plaintiffs filed their opposition papers on April 29, 2022. (Dkt. #219-221). Defendants filed a reply in further support of their motion on May 6, 2022. (Dkt. #222). The Court later denied Plaintiffs' request to file a sur-reply. (Dkt. #224). Defendants' motion is therefore fully briefed.

## DISCUSSION

### A.   Discovery Sanctions Under Federal Rule of Civil Procedure 37

The applicable legal standards are not in dispute. Pursuant to Federal Rule of Civil Procedure 26, parties are required to disclose, "without awaiting a discovery request ... all documents ... the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(ii).

When a party fails to meet their Rule 26 disclosure obligations, the court may impose sanctions under Rule 37. Rule 37(c)(1) provides that, "[i]f a party fails to provide information ... as required by Rule 26(a) ..., the party is not allowed to use that information ... to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The Rule further provides that, "[i]n addition to or instead of

---

[5]   More precisely, on April 8, 2022, Defendants Carruthers, Davies, Gambol, and Coda filed opening submissions addressing the merits of their motion (Dkt. #214-215), and Defendant Vision Films filed a submission joining in the co-defendants' arguments (Dkt. #216).

this sanction," the court "may order payment of the reasonable expenses, including attorney's fees, caused by the failure"; "may inform the jury of the party's failure"; and "may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)." *Id.* Rule 37(b)(2)(A)(i)-(vi), in turn, lists a range of available sanctions, from staying further proceedings until the order is obeyed to rendering a default judgment against a party.

"Rule 37 grants district courts broad 'discretion to impose other, less drastic, sanctions' than preclusion." *N.Y.C. Transit Auth.* v. *Express Scripts, Inc.*, — F. Supp. 3d —, No. 19 Civ. 5196 (JMF), 2022 WL 603937, at *9 (S.D.N.Y. Mar. 1, 2022) (quoting *Design Strategy, Inc.* v. *Davis*, 469 F.3d 284, 298 (2d Cir. 2006)), *reconsideration denied*, No. 19 Civ. 5196 (JMF), 2022 WL 3577426 (S.D.N.Y. Aug. 19, 2022). "In fact, preclusion is a 'harsh remed[y]' that 'should be imposed only in rare situations.'" *Id.* (quoting *Update Art, Inc.* v. *Modiin Pub., Ltd.*, 843 F.2d 67, 71 (2d Cir. 1988)). "Before the extreme sanction of preclusion may be used by the district court, a judge should inquire more fully into the actual difficulties which the violation causes, and must consider less drastic responses." *Outley* v. *City of New York*, 837 F.2d 587, 591 (2d Cir. 1988).

In determining whether preclusion or another sanction is appropriate, courts in the Second Circuit consider "[i] the party's explanation for the failure to comply with the [disclosure requirement]; [ii] the importance of the … precluded [evidence]; [iii] the prejudice suffered by the opposing party as a result of having to prepare to meet the new [evidence]; and [iv] the possibility of

8

a continuance." *Design Strategy, Inc.*, 469 F.3d at 296 (quoting *Patterson* v. *Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006)); *accord Softel, Inc.* v. *Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 961 (2d Cir. 1997).  Additionally, in some circumstances, "[c]onsiderations of fair play may dictate that courts eschew the harshest sanctions ... where failure to comply is due to a mere oversight of counsel amounting to no more than simple negligence." *Outley*, 837 F.2d at 591 (quoting *Cine Forty-Second St. Theatre Corp.* v. *Allied Artists Pictures Corp.*, 602 F.2d 1062, 1068 (2d Cir. 1979)).

**B.  Analysis**

### 1.  Plaintiffs Violated Federal Rule of Civil Procedure 26

The Court begins by addressing whether Plaintiffs satisfied their initial disclosure obligations under Rule 26.  Defendants argue that Plaintiffs violated Rule 26 by failing to disclose the Pittenger Documents until the filing of their motion for summary judgment.  (Def. Br. 6-10).  In response, Plaintiffs concede that the Pittenger Documents "should have been produced" earlier, but claim that their failure to do so was the result of an unintentional oversight that was not discovered until Defendants began moving for sanctions.  (Pl. Opp. 3).

Given the parties' agreement as to the material facts, the Court has no difficulty finding that Plaintiffs violated Rule 26(a)(1).  Plaintiffs produced ten documents purporting to establish their ownership interest in certain Rolling Stones compositions for the first time as exhibits to the Pittenger Declaration. (Def. Br. 2; Pl. Opp. 1).  There is no dispute that the Pittenger Documents were in Plaintiffs' possession and were used to support their claims.  *See* Fed. R. Civ.

P. 26(a)(1)(A)(ii). The disclosure of the Pittenger Documents came many months after the expiration of the initial disclosure deadline. (*See* Dkt. #51 at 1). Additionally, although Rule 26 does not require the opposing party to have requested the untimely documents before it requires the disclosure of the documents, Defendants did call for the Pittenger Documents in their June 2020 request for documents and interrogatories. (Def. Br. 3-4).

Furthermore, notwithstanding Plaintiffs' claim not to have known of their failure to produce the Pittenger Documents until Defendants indicated that they would move for discovery sanctions, the undisputed evidence suggests that Plaintiffs were aware of their disclosure failings at least as of several months earlier. Plaintiffs conceded as much at the pre-motion conference held on March 24, 2022, where their counsel explained that Plaintiffs had included the Pittenger Documents with their moving papers in anticipation of Defendants "com[ing] back" and "say[ing]" that they had not "seen the chain of title[.]" (Def. Br. 5). This statement suggests that Plaintiffs were aware that the documents had not been disclosed at least as of the filing of their motion for summary judgment. Yet at no point did Plaintiffs alert either Defendants or the Court to the fact that the documents had not been disclosed earlier. Plaintiffs should have, and were required to, disclose the documents as soon as they learned that they had failed to do so earlier. *See* Fed. R. Civ. P. 26(e)(1) (requiring litigants to supplement their initial productions "in a timely manner" if the litigant learns that their initial disclosure was incomplete or incorrect).

### 2. Sanctions Are Appropriate

Having found that Plaintiffs failed to meet their disclosure obligations under Rule 26, the Court now considers whether to impose sanctions under Rule 37. Rule 37 authorizes a court to preclude evidence or impose other sanctions for a violation of Rule 26 "unless the failure [to disclose] was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "The burden to prove substantial justification or harmlessness rests with the dilatory party." *Am. Stock Exch., LLC* v. *Mopex, Inc.*, 215 F.R.D. 87, 93 (S.D.N.Y. 2002).

Here, Plaintiffs have not shown that their disclosure violation was either substantially justified or harmless. Beyond invoking the COVID-19 pandemic and certain limitations in their electronic recordkeeping practices (*see* Pittenger Decl. ¶¶ 7, 11), Plaintiffs have not attempted to justify their failure to produce the Pittenger Documents. The Court therefore finds that Plaintiffs' violation of Rule 26 was not substantially justified. Similarly, although Plaintiffs are not entirely consistent on the point, they concede in certain portions of their briefing that their discovery violation was not harmless because it precluded Defendants from deposing Klein on the documents. (Pl. Opp. 5). Indeed, Plaintiffs ask the Court in their opposition brief to reopen fact discovery to allow Defendants to depose Klein a second time and permit Defendants to file a supplemental summary judgment brief following that deposition. (*Id.* at 24).

Despite their concession that their disclosure violation prejudiced Defendants, Plaintiffs suggest that their violation should be excused because Defendants were aware that the Pittenger Documents had not been disclosed

11

months prior to moving for discovery sanctions and sought to use the nondisclosure to their advantage. (Pl. Opp. 4). There is some evidence to support Plaintiffs' contention that Defendants were aware that at least some of the undisclosed documents in advance of their ultimate disclosure. As discussed earlier, Defendants' former counsel sent a letter to Plaintiffs' counsel referencing at least one of the undisclosed records four months after Klein's deposition. (Pittenger Decl. ¶ 14). This letter suggests that Defendants recognized that Plaintiffs were relying on that undisclosed document to establish their ownership interest. (*Id.*). And if there were any doubt as to Plaintiffs' intentions, Plaintiffs hammered the point home in a responsive letter, in which their counsel explained that the undisclosed document "forms the basis of AMI's ownership of the compositions[.]" (*Id.* at ¶ 15).

None of this, however, changes the Court's ultimate calculus as to the harmlessness (or not) of Plaintiffs' discovery violation. To begin, Plaintiffs have shown at most that Defendants were aware that Plaintiffs had not produced certain records *after* Klein's deposition. (*See* Dkt. #215-4). Defendants were therefore already prejudiced by the time they learned of Plaintiffs' failure to make timely and complete disclosures. Further, Plaintiffs have demonstrated that Defendants knew or should have known that *some*, but not *all*, of the undisclosed records existed and might be relevant to their defense. There is nothing in the record suggesting that Defendants knew of each of the ten undisclosed records prior to Plaintiffs' motion for summary judgment.

All said, Plaintiffs have not shown that their failure to comply with Rule 26 was either substantially justified or harmless. Accordingly, the Court proceeds to consider whether preclusion of the Pittenger Documents or a less severe sanction is appropriate to address Plaintiffs' discovery violation.

### 3. The Selection of an Appropriate Sanction

As noted earlier, a court must consider several factors when choosing a discovery sanction. The Second Circuit has held that a district court must consider: "[i] the party's explanation for the failure to comply with the [disclosure requirement]; [ii] the importance of the ... precluded [evidence]; [iii] the prejudice suffered by the opposing party as a result of having to prepare to meet the new [evidence]; and [iv] the possibility of a continuance." *Design Strategy, Inc.*, 469 F.3d at 296. The Court addresses these factors in turn.

#### a. Explanation

The parties dispute whether Plaintiffs willfully violated Rule 26. According to Plaintiffs, the Pittenger Documents were not produced due to a combination of the way in which Plaintiffs searched their records for discoverable documents and the way in which they maintained their files. (Pittenger Decl. ¶¶ 7-12). Plaintiffs thus assert that their failure to produce the documents was "inadvertent, non-willful and unintentional." (*Id.* at ¶ 6). By contrast, Defendants argue that Plaintiffs willfully withheld the documents. (Def. Br. 7-10, 20-23). Defendants base this argument on several facts, including the July 2021 stipulation request, the assertion that several relevant

13

documents have still not been produced, and Plaintiffs' purported attempts to minimize the significance of the Pittenger Documents. (*Id.* at 20-23).

The Court is extremely troubled by Plaintiffs' actions in this case, but cannot find on the record before it that they willfully withheld the Pittenger Documents. Defendants are undoubtedly correct that Plaintiffs were negligent in failing to disclose the documents. And, as noted earlier, Plaintiffs' claim that they did not recognize that the Pittenger Documents had not been produced until Defendants moved for sanctions is belied by the record. Plaintiffs knew or should have known that the records had not been produced in the leadup to the filing of their motion for summary judgment. Still and all, the record does not demonstrate that Plaintiffs' failure to disclose the documents was anything more than the product of oversight and carelessness. Defendants have not identified any incentive that would motivate Plaintiffs to intentionally withhold such critical documents, and indeed the Court agrees with Plaintiffs that they had every incentive to produce the documents far sooner than they did. Accordingly, the Court finds that Plaintiffs' explanation for their discovery violation does not excuse or justify the violation, but is sufficient to counsel against the extreme sanctions of dismissal or preclusion of the documents.

### b.  Importance

The parties agree that the Pittenger Documents are critical to Plaintiffs' case. "An assignee of a valid copyright who is not named on the registration as the owner has the additional burden of proving valid chain of title 'because nothing in the registration certificate evidences his right to claim through the

14

original copyright claimant.'" *Arista Recs. LLC* v. *Lime Grp. LLC*, No. 06 Civ. 5936 (KMW), 2011 WL 1641978, at *2 (S.D.N.Y. Apr. 29, 2011) (quoting 3-12 Melville B. Nimmer & David Nimmer, NIMMER ON COPYRIGHT § 12.11[C] (2010)); *see also Hartmann* v. *Amazon.com, Inc.*, No. 20 Civ. 4928 (PAE), 2021 WL 3683510, at *4 (S.D.N.Y. Aug. 19, 2021) (same). Here, Plaintiffs are relying on the Pittenger Documents to meet this additional burden. If the Court were to preclude Plaintiffs from relying on the documents, therefore, Plaintiffs would likely be unable to continue to pursue their claims due to a lack of standing. Given the courts' strong preference to resolve cases on their merits, this factor weighs against preclusion. *See Haas* v. *Delaware & Hudson Ry. Co.*, 282 F. App'x 84, 86 (2d Cir. 2008) (summary order) (holding that when the contested evidence is important for the plaintiff's case, this factor weighs against preclusion of the evidence).

        **c.**    **Prejudice**

As discussed above, there is no real dispute that Plaintiffs' failure to disclose the Pittenger Documents prejudiced Defendants by precluding them from inquiring into the documents at Klein's deposition in November 2021. *See Capitol Recs., LLC* v. *Escape Media Grp., Inc.*, No. 12 Civ. 6646 (AJN) (SN), 2014 WL 12698683, at *10 (S.D.N.Y. May 28, 2014) (finding that inability to ask questions about untimely-produced documents at deposition constitutes prejudice warranting sanctions under Rule 37), *report and recommendation adopted*, No. 12 Civ. 6646 (AJN), 2015 WL 1402049 (S.D.N.Y. Mar. 25, 2015). That said, this form of prejudice can be remedied by sanctions short of

15

dismissal or preclusion. To the extent Defendants were unable to depose Klein on the Pittenger Documents, that prejudice can be remedied by reopening Klein's deposition and shifting the costs incurred to Plaintiffs. This factor therefore counsels in favor of sanctions, but not for dismissal or preclusion.

### d.  Continuance

The last factor the Court must consider is whether a continuance is possible. There is no trial scheduled in this matter and thus there is no question that a continuance is feasible. In addressing this factor, however, courts in this Circuit have considered not only whether a continuance is possible, but also whether a continuance would be efficient or just under the totality of the circumstances. *See, e.g., Capitol Recs., LLC*, 2014 WL 12698683, at *11 (finding that this factor weighed in favor of preclusion because "granting a continuance at this late stage in the litigation would be inefficient, unduly prejudicial, and an unwarranted concession to [the non-disclosing party] for its violations of Rule 26"); *Chen* v. *New Trend Apparel, Inc.*, No. 11 Civ. 324 (GBD) (MHD), 2014 WL 1265916, at *20 (S.D.N.Y. Mar. 27, 2014) (making a similar observation). Here, the Court is cognizant that prolonging what has already been an unnecessarily lengthy and complicated case risks rewarding Plaintiffs for their negligence. Again, however, the Court finds that this prejudice can be remedied by shifting to Plaintiffs the costs resulting from their discovery violation. The Court thus finds that this factor weighs against dismissal or preclusion.

### e. Sanctions

As previewed above, the Court finds that sanctions short of dismissal or preclusion are appropriate. Defendants have shown (and Plaintiffs do not dispute) that Plaintiffs were at least negligent in failing to disclose the Pittenger Documents prior to the filing of their motion for summary judgment, but Defendants have not demonstrated that Plaintiffs intentionally withheld the documents. The parties agree that Plaintiffs' negligence has prejudiced Defendants by preventing them from deposing Klein on any issues raised by the Pittenger Documents, and Defendants are undoubtedly correct that they have also been prejudiced by being forced to incur significant expenses in litigating and resolving the issue. After considering these facts, the Court finds that Plaintiffs' misconduct and the corresponding prejudice to Defendants is best addressed by the combination of sanctions outlined below.

*First*, the Court will reopen fact discovery on a limited basis to allow Defendants to depose Klein on the Pittenger Documents. *Second*, the Court will reopen the summary judgment briefing schedule to allow Defendants (but not Plaintiffs) to file a supplemental brief, not to exceed ten pages, on any issues related to the supplemental Klein deposition. *Third* and lastly, because Plaintiffs' discovery violation is the driving force behind this round of litigation and the need for still more discovery and briefing, the Court will award costs to Defendants. Plaintiffs shall pay the reasonable expenses Defendants incurred in (i) filing the instant motion for discovery sanctions; (ii) conducting the supplemental Klein deposition; and (iii) filing their anticipated supplemental

17

brief in support of their motion for summary judgment. The Court will provide further instruction on this issue after the resolution of the case.

The Court ends with the following admonition: In their opening sanctions submission, Defendants contended that, even with the production of the Pittenger Documents, Plaintiffs still had not complied with their disclosure obligations. (*See* Def. Br. 20-21 ("Moreover, the Pittenger Documents are themselves incomplete[.]) & n.8 ("The UK Defendants have also recently discovered that yet another Pittenger Document is incomplete.")). The claim is not repeated in Defendants' reply brief, and the Court hopes that the issue is resolved. That said, to the extent that Plaintiffs have not produced the complete set of the Pittenger Documents, the Court instructs them to produce them immediately. More broadly, the Court expects that Plaintiffs have fully discharged their discovery obligations. Further production problems or analogous discovery violations will not be tolerated. If it is shown that additional discoverable documents have been withheld by Plaintiffs, the Court will not hesitate to revisit this decision and impose more severe sanctions.

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART Defendants' motion for discovery sanctions pursuant to Federal Rule of Civil Procedure 37. The parties shall submit on or before **October 12, 2022**, a joint letter proposing dates for Klein's supplemental deposition and for the submission of Defendants' supplemental brief in support of their motion for summary judgment. In the meantime, the Court will enter an administrative stay and

18

defer decision on the remaining pending motions until Defendants submit their supplemental brief.

The Clerk of Court is directed to terminate the motion at docket entry 214. The Clerk of Court is further directed to STAY this case pending further order of the Court.

SO ORDERED.

Dated:   September 28, 2022
         New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge