**Robert Carruthers**

Defendant, appearing pro se and for himself only

Kirk House, Green Lane, Bosham,

West Sussex, PO18 8NT

rkcarruthers@gmail.com

May 19th, 2026

**VIA ECF**

The Honorable Katherine Polk Failla

United States District Judge

Southern District of New York

40 Foley Square

New York, NY 10007



**MEMO ENDORSED**

**Re: ABKCO Music, Inc., et al. v. Coda Publishing Ltd., et al., No. 19-cv-11892 (KPF)**

**Letter Motion to Disqualify Michael Kramer as Plaintiffs' Litigation Advocate / Agent, Designate Him as a Material Witness to Fact, Reopen Targeted Discovery, and Impose Sanctions or Issue an Order to Show Cause**

Dear Judge Failla:

I respectfully submit this letter motion on my own behalf only. I do not act for, and do not purport to act for, Coda Publishing Ltd., Gwilym Davies, or Clare Gambold. However, the facts addressed below concern a joint judgment, joint allegations, joint discovery failures, and a common litigation strategy advanced by Plaintiffs.

I move for an order disqualifying Michael Kramer from acting further as Plaintiffs' advocate, litigation strategist, representative, or litigation agent; directing that he be treated as a material witness to fact; reopening targeted discovery into his role; compelling production of withheld documents; permitting his deposition; and imposing sanctions, or alternatively issuing an order to show cause why sanctions should not be imposed.

Mr. Kramer is not an ordinary lawyer acting at arm's length. He is a central ABKCO insider, a member of the Klein family circle, Jody Klein's cousin, and ABKCO's former in-house counsel until approximately 1983. He is a witness to the very history now in dispute: ABKCO's claimed acquisition, ownership, exploitation, registration, licensing, settlement history, and asserted chain of title in The Rolling Stones Rock and Roll Circus and its soundtrack.

He is also credited in commercial materials for the very work at the heart of this case. The release materials include "Special Thanks to Michael Kramer." Exhibit A is the notarized copy of the  book containing text  stills and the  credits which appear on page 43 of the copy of the book attached as Exhibit A . That credit places Mr. Kramer inside the factual history of the work, its re-release, its exploitation, and ABKCO's asserted title. He cannot be both a witness to the transaction and a litigation controller seeking to preserve a judgment based on disputed facts.

This is not a tactical objection to opposing counsel. It is a foundational integrity issue. Mr. Kramer is a necessary witness to fact on ownership, standing, chain of title, performer consents, ABKCO Films Inc., the alleged 1995/1996 "work made for hire," the 26 March 2019 pre-action letter, Plaintiffs' shifting theories, withheld discovery, William Pittinger's undisclosed role, and communications with Joshua Ray. These are not peripheral matters. They go to the validity of the judgment itself.

Plaintiffs' position concerning The Rolling Stones Rock and Roll Circus is facially impossible without full evidential scrutiny. The film was shot in London at Intertel Studios, Wembley, in December 1968. It featured world-famous performers including John Lennon, Brian Jones, Keith Moon, Pete Townshend,

Eric Clapton, Yoko Ono, Marianne Faithfull, Jethro Tull, Taj Mahal, and others. It is one of the most famous films in rock and roll history and was the first film to feature John Lennon outside his role in The Beatles.

Yet Plaintiffs have relied on a theory treating this 1968 United Kingdom film as if it were a 1995/1996 United States work made for hire. That proposition is not merely contestable. It is impossible on its face. Brian Jones and Julius Katchen were dead by 1969. Keith Moon had been dead since 1978. John Lennon had been dead since 1980. These performers could not have created or authorised a new United States work made for hire in 1995/1996.

Mr. Kramer is one of the few people connected to ABKCO who can explain what was actually done in 1995/1996, what documents existed, what performer or estate consents existed, what chain-of-title documents existed, what was filed with the Copyright Office, what was disclosed to this Court, and what was withheld. His evidence is therefore central.

The same applies to the missing 1968 documents. Plaintiffs have not produced satisfactory evidence of 1968 performer consents, production or financing agreements, assignments from Colourtel Productions Ltd., liquidation records disposing of Colourtel's rights, agreements from The Rolling Stones Partnership, ABKCO memoranda, soundtrack clearance documents, Universal/UMG agreements, Adam Barker communications, William Pittinger communications, ABKCO Films Inc. records, or communications concerning the 26 March 2019 letter before action. Mr. Pittinger is credited in the release materials for "Legal and Business Affairs." He made two court declarations, yet did not disclose that key role. That omission is material because legal and business affairs are precisely where chain-of-title, clearance, licensing, consent, and distribution documents would be held or controlled.

Plaintiffs' failure to disclose copyright registration TX0004652126 is equally fundamental. That registration concerns the text of the hardback book accompanying the DVD/CD release and incorporated into the release materials, including text by David Dalton. The book is not collateral: it records and confirms that the film was made in the United Kingdom in December 1968, directly contradicting any 1995/1996 United States work-made-for-hire theory. That 26 March 2019 letter is itself central. It asserted claims on behalf of, among others, ABKCO Films Inc., an entity whose existence and capacity are seriously disputed. It threatened enormous damages for alleged "international" copyright infringement, including Rolling Stones sound recordings and The Rolling Stones Rock and Roll Circus. There is no such freestanding cause of action as "international copyright infringement." Copyright is territorial. Plaintiffs' worldwide threats and shifting theories required strict proof of title, territory, authorship, subsistence, and standing. That proof was not produced.

Mr. Kramer is a material witness to how that letter was formulated, who instructed it, what factual enquiries were made, what ABKCO entities were relied upon, what documents were available, and why the claims later shifted. If the letter was false, exaggerated, or advanced by or on behalf of a non-existent or improper claimant, Mr. Kramer is not merely a lawyer. He is a fact witness.

Mr. Kramer is also a witness to Plaintiffs' communications with Joshua Ray. I understand that Mr. Ray recorded, in substance, that Mr. Kramer stated that the United Kingdom side, including Universal / Adam Barker, were "pissed off" and that this was driving or influencing the litigation. If proved, that is evidence of motive, improper purpose, undisclosed control, and abuse of process. It is not privileged advocacy. It is factual evidence.

Mr. Kramer cannot use Mr. Ray as a shield or mouthpiece. Mr. Ray's interests are now adverse to mine. I am in dispute with Mr. Ray and Candey Ltd. concerning their representation, the joint CFA, the termination of representation, the failure to make motions, and the failure to raise fundamental English-law and chain-of-title issues. Mr. Kramer is not Mr. Ray's attorney and cannot speak for him. Nor can he rely on Mr. Ray to manufacture a supposed unified position binding me while avoiding disclosure of his own knowledge.

The Court's 28 September 2022 discovery order is directly relevant. The Court stated that it expected Plaintiffs to have fully discharged their discovery obligations and that further production problems or analogous discovery violations would not be tolerated. That warning was ignored. The omitted materials concern the foundation of Plaintiffs' case: ownership, standing, performer consents, chain of

title, synchronisation, damages, ABKCO Films Inc., Universal/UMG, and the claimed 1995/1996 creation theory. Michael Kramer's  Witness Statement in Case 15 Civ.04025 (ER) (HBP) 3rd March 2017 attached as Appendic C  evidences his involvement in the copyrights which underly these matters for more than 50 years.

Plaintiffs cannot be permitted to obtain and preserve summary judgment while withholding the very documents that would prove or disprove their title. Nor can a central ABKCO insider with first-hand factual knowledge remain embedded in the litigation as an advocate or strategist while avoiding examination as a witness.

The advocate-witness problem is acute. A lawyer or litigation representative cannot fairly argue disputed facts where he is himself a likely witness on those facts. The prejudice is obvious. Mr. Kramer's personal knowledge, family connection, ABKCO history, credit on the release, role in pre-action threats, and involvement in communications with Mr. Ray make him a necessary witness. Mr. Pittinger's "Legal and Business Affairs" credit and two court declarations further confirm that ABKCO/UMG fact witnesses with document-control roles were embedded in the disputed factual record while central facts were withheld or omitted. Mr. Kramer's continued participation contaminates the fairness of the proceedings.

I therefore respectfully request that the Court enter an order: (1) disqualifying Michael Kramer from acting further as Plaintiffs' advocate, litigation strategist, representative, or litigation agent; (2) directing Plaintiffs to identify fully Mr. Kramer's role in this litigation from 2019 to date, including his involvement in the 26 March 2019 letter, pleadings, discovery responses, summary-judgment submissions, damages submissions, settlement communications, and communications with Joshua Ray; (3) designating Mr. Kramer as a material witness to fact concerning chain of title, ABKCO corporate history, ABKCO Films Inc., the 1995/1996 release and registration, performer consents, soundtrack exploitation, Universal/UMG involvement, Adam Barker, William Pittinger, and communications with Joshua Ray;

(4) reopening targeted discovery into Mr. Kramer's role and the withheld chain-of-title, performer-consent, Universal/UMG, ABKCO Films Inc., and 1995/1996 release / registration materials, including copyright registration TX0004652126 and the hardback book text; (5) compelling production of all non-privileged documents and privilege logs concerning Mr. Kramer's factual role, including communications with Jody Klein, ABKCO, Universal/UMG, Adam Barker, William Pittinger, Joshua Ray, Candey Ltd., Vision Films, and any person involved in the exploitation or registration of The Rolling Stones Rock and Roll Circus; (6) permitting Mr. Kramer's deposition as a witness to fact;

(7) precluding Plaintiffs from relying on any chain-of-title, performer-consent, work-made-for-hire, Universal/UMG, soundtrack, or damages theory not properly disclosed in discovery; (8) ordering Plaintiffs to show cause why sanctions should not be imposed for discovery omissions, misleading ownership assertions, shifting theories, and reliance on a material witness as advocate; and (9) granting such further relief as the Court deems just and proper, including relief under Rule 60(d)(3) if the Court concludes that the judgment was procured through fraud on the Court.

The Court cannot fairly determine damages, sanctions, disqualification, discovery misconduct, or fraud on the Court while one of the central witnesses to the disputed chain of title is permitted to operate behind counsel's table. Mr. Kramer's evidence goes to the heart of the case. He should be examined as a witness, not protected as an advocate.

Respectfully submitted,

**Robert Carruthers**

Defendant, appearing pro se and for himself only

Exhibits: A notarized Kramer credit " special Thanks To Michael Kramer "; DVDI/book credits; William Pittinger "Legal and Business Affairs" hardback book/DVD/CD release text showing United Kingdom production in December 1968 Exhibit B ; copyright registration TX0004652126; Exhibit C Michael Kramer Witness Statement in Case 15 Civ.04025 (ER) (HBP) 3rd March 2017

Application DENIED.

This litigation has been pending for seven years, and Mr. Kramer's relationship to the Klein family has been known, if not from the beginning, then from an early point in the case.  It is far too late and impermissibly strategic for Mr. Carruthers to seek to disqualify Mr. Kramer now.  Similarly, the issues related to the chain of title — to the extent that there is any basis in the record to make such a claim — have also been known for quite some time.  Mr. Kramer is not needed to substantiate the chain of title, nor is he needed to discuss production issues that were resolved by the Court's September 28, 2022 Order.  (*See* Dkt. #226).

The Court feels compelled to reiterate that Mr. Kramer is not using Mr. Ray as a "shield or mouthpiece."  (Dkt. #280 at 2).  As the Court has already made clear in its May 20, 2026 Order, "there is nothing in the lengthy record of this case that suggests any collusion between" Mr. Kramer and Mr. Ray.  (Dkt. #279 at 2).

The Clerk of Court is directed to terminate the pending motion at docket entry 280.

Dated:    May 21, 2026          SO ORDERED.
          New York, New York


                                HON. KATHERINE POLK FAILLA
                                UNITED STATES DISTRICT JUDGE