**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ABKCO MUSIC & RECORDS, INC., et al.,
Plaintiffs,

-v-

CODA PUBLISHING LTD., ROBERT CARRUTHERS, et al.,
Defendants.

**Case No. 19-cv-11892 (KPF) (BCM)**

**LETTER-MOTION RE SETTLEMENT CONFERENCE, REMOTE ATTENDANCE, REAL PARTIES IN INTEREST, TRUSTEES, CONFLICTS, AND SETTLEMENT AUTHORITY**

**3 July 2026**

The Honorable Katherine Polk Failla
United States District Judge
Southern District of New York

The Honorable Barbara Moses
United States Magistrate Judge
Southern District of New York

**Re: ABKCO Music & Records, Inc. et al. v. Coda Publishing Ltd. et al., No. 19-cv-11892 - Settlement Conference**

Dear Judge Failla and Judge Moses:

I am a pro se Defendant in the United Kingdom. I submit this letter-motion concerning settlement. No conference date is scheduled. This is not an adjournment. Before any conference is scheduled, the Court should require Plaintiffs to identify decision-makers, permit remote attendance by UK Defendants, and recognise that settlement must address UK aspects of a claim pleaded as arising in the US "and elsewhere."

I am an Emmy Award-winning investigative journalist and author specialising in white-collar crime in the music industry. I wrote The Pink Fraud - The Dark Side of the Tunes. These proceedings have the practical effect of silencing my right to speak. My current book, The Rolling Stones Circus Organised Crime Group, concerns the same ground: UK copyrights created in the 1960s and 1970s.

I do not oppose a genuine settlement conference. I oppose an in-person New York conference used as leverage while Plaintiffs' ownership, standing, authority, UK exposure, prior settlements, insurance, and double recovery remain unresolved. Plaintiffs brought this case jointly by combining disparate claims, entities, recordings, compositions, films, soundtracks, territories, and title chains. They did so on the false premise that I directed the eleven documentary films originally at issue. That allegation was later abandoned, and the foundation for treating me as the organising personal actor fell away.

The same problem applies to my wife, Clare Carruthers. Plaintiffs targeted her personally on the alleged basis that she was a de jure director and shareholder of Coda Publishing Ltd. That was completely false. The Official Companies House record disproves it. Clare had resigned as director six years earlier and was not a shareholder. That allegation pressured my wife and expanded a copyright case into a personal attack on UK individuals who were not operational actors.

The unfairness is compounded by Vision Films Inc. and Lisa Romanoff. The Vision Films Inc agreement with Coda Books Ltd dated 19 October 2018 is the essential document fundamental to Plaintiffs' claim. It is governed by California law. It was signed by Gwilym Davies, who is not and never has been a de jure director of Coda Publishing Ltd. Plaintiffs rely on that contract, yet the Court has not addressed California law, the arbitration clause, no agency clause, Schedule A's limited scope, absent disputed films, or the parties. The agreement omits Coda Publishing Ltd's registered address and uses a Stratford-upon-Avon office address. It was with Coda Books Ltd, not Coda Publishing Ltd or UK Defendants personally. Under UK and California law, the contracting party cannot simply be assumed to be Coda Publishing Ltd.

Schedule A was limited to only four of the eleven documentary films originally placed in issue. It did not grant rights to sell the full set now relied on. Lisa Romanoff nevertheless exploited ten films. The remaining film involved Ammo Films Inc. The eleven films were reduced to ten when Plaintiffs abandoned the claim that Nirvana: The Path from Incesticide to In Utero infringed Plaintiffs' rights in the United States "and elsewhere." The 26 March 2019 letter alleged that ABKCO Films Inc. owned relevant rights. That was false. The position was later amended to a

"division," but a division is not a legal person and cannot own copyright. Plaintiffs also alleged Vision Films acted as agent, although the agreement contains no agency clause. The arbitration clause was not invoked. I cancelled the Coda Books Ltd contract in 2020 as soon as I became aware of the position.

Any genuine settlement conference must address the UK Defendants' time and expenditure caused by false, abandoned, or overbroad claims, including the abandoned allegation that I directed the eleven films and the false allegation against Clare. It must also address double recovery. If Vision Films Inc. has settled, Plaintiffs must identify what was settled, what works were covered, whether the same alleged infringements are still pursued against UK Defendants, and whether Vision Films' insurers funded or influenced that settlement. Plaintiffs should not recover from Vision Films and then use the same chain as pressure against UK individuals without disclosing the settlement and insurance position.

The Second Circuit's ruling in ABKCO Music, Inc. v. Sagan, No. 20-3816, is material. It rejected personal direct copyright liability based merely on status, ownership, supervision, instruction, or financial interest, and held that direct liability requires volitional conduct by the person who actually presses the button. That principle is fundamental where Plaintiffs pressure UK individuals, including my wife and business partner, while avoiding operational actors. Evidence concerning Sagan and Lisa Romanoff makes it essential to identify who actually caused the relevant acts before settlement pressure is applied.

The summary judgment record is unsafe because a central part of Plaintiffs' case treats The Rolling Stones Rock and Roll Circus, a UK film and soundtrack made in 1968, as though it were a later United States work made for hire in 1995. A work made for hire is a narrow statutory concept. It is not a device by which later exploiters rewrite the origin of an earlier film. Rock and Roll Circus was filmed in the United Kingdom in 1968 and featured original live performances by John Lennon, Keith Moon, and Brian Jones. Brian Jones died in July 1969, Keith Moon in 1978, John Lennon in 1980. These were not archive clips inserted into a later American film; they were original filmed performances.

Prior publication and exploitation make the point clearer. Substantial parts had already been published or exploited long before the alleged later United States work-for-hire theory. The Kids Are Alright was released in 1979 and included material connected with The Who and Keith Moon. 25x5: The Continuing Adventures of the Rolling Stones included Rock and Roll Circus-related material featuring Brian Jones, who died in July 1969. Those uses show the material already existed as 1968 UK-created subject matter. A later United States release, edit, restoration, soundtrack, DVD, VHS, laserdisc, or repackaging cannot retrospectively convert it into a United States work made for hire.

The Berne Convention analysis points back to the United Kingdom. This is not merely a US damages issue. Plaintiffs' own formulation has been "US and elsewhere." A settlement cannot be meaningful unless it deals with UK-created copyrights, UK-origin films and sound recordings, UK performer and chain-of-title issues, UK insolvency law, and any UK chose in action affecting Coda Publishing Ltd in liquidation. My book was provided to the Official Receiver because it concerns a valuable chose in action and the same factual ground. If the film and soundtrack were illicitly made or exploited in the United Kingdom, ex turpi causa and nemo dat are engaged: no action should arise from an unlawful cause, and no one can give what they do not have.

Coda Publishing Ltd is in compulsory liquidation and controlled by the Official Receiver. The Official Receiver is a statutory officeholder under Insolvency Act 1986, ss.399 and 401, and becomes liquidator on a winding-up order by s.136(2). I cannot settle on behalf of Coda. No former director can bind Coda. Any global settlement affecting Coda or UK rights without the Official Receiver's authority would be defective.

The real parties in interest and persons with settlement authority remain unidentified. I have made a motion raising the issue that the true controlling and/or beneficial parties appear to include Universal Music Group N.V. and the Allen Klein Credit Trust. The trustees and alternate trustees of the Allen Klein Credit Trust are essential. The Court and Defendants cannot assess settlement authority, beneficial ownership, control, conflicts, or compromise validity unless Plaintiffs disclose who the trustees and alternate trustees are, who can bind the trust, who can approve settlement, who drafted the trust documents, and whether any trustee, alternate trustee, attorney, officer, family member, corporate representative, or participant is conflicted.

I have also been targeted with a demand that I post a bond while Plaintiffs have still not identified the true owners, trustees, parent companies, settlement decision-makers, Vision Films settlement, or insurance position. That is unfair. A bond demand against a UK pro se investigative journalist should not be used as pressure to force attendance or settlement while Plaintiffs' own ownership, standing, control, and authority remain unresolved.

Remote attendance is practical and proportionate. Plaintiffs' depositions were all conducted remotely from California. Defendants' counsel attended remotely from the United Kingdom. Hearings involving the UK Defendants have

proceeded remotely. The case has narrowed from 132 items to 85, and from eleven films to ten, without UK Defendants travelling to New York. The UK Defendants are on a different continent; Coda and the Official Receiver are in the United Kingdom; Universal Music Group N.V. is Dutch; relevant Universal personnel may be in California or the Netherlands; ABKCO/Klein trust interests require trustees and alternate trustees. Remote attendance is more likely to secure actual decision-makers.

There is no written judgment explaining why, after seven years of remote management, remote depositions from California, and remote participation by UK Defendants and their counsel, physical attendance in New York is now necessary. Absent a reasoned written finding, the history supports remote attendance.

These were arguable grounds, not peripheral points. Each went to ownership, authority, standing, agency, contractual scope, arbitration, volitional conduct, chain of title, personal liability, contracting party, copyright owner, country of origin, double recovery, insurance, or settlement authority. Together, they made summary judgment unsafe. A case involving disputed UK-origin copyrights, a California-law distribution contract, no agency clause, an uninvoked arbitration clause, a limited Schedule A, a false ABKCO Films Inc. ownership assertion, an attempted "division" ownership theory, abandoned film-direction allegations, false allegations against Clare, unresolved Vision Films/Lisa Romanoff issues, Sagan, Coda's liquidation, and disputed real parties in interest was not suitable for summary determination against UK individuals. At minimum, these issues required evidence, item-by-item analysis, and trial.

Accordingly, I respectfully request an order: (1) excusing the UK Defendants from physical attendance and permitting attendance by video; (2) directing Plaintiffs to identify each person with full settlement authority and the entity, parent, trust, estate, insurer, indemnifier, assignee, or other interest represented; (3) directing Plaintiffs to state whether Universal Music Group N.V. is a real party in interest or controlling party; (4) directing Plaintiffs to identify the trustees and alternate trustees of the Allen Klein Credit Trust, the person with settlement authority, and the attorney or law firm that drafted the trust documents; (5) directing Plaintiffs to confirm any conflict connected with the trust, Plaintiffs, or settlement proceeds; (6) directing that no settlement affecting Coda or UK aspects proceed unless the Official Receiver is notified, invited, and Coda's authority is addressed; (7) directing disclosure of the material Vision Films settlement terms concerning the same works, releases, indemnities, insurance proceeds, double-recovery issues, or claims against UK Defendants; (8) directing Plaintiffs to address Sagan, Vision Films Inc., Lisa Romanoff, the California-law contract, Coda Books Ltd, Schedule A, the exploitation of ten films, Ammo Films Inc., the uninvoked arbitration clause, absence of agency, the 2020 cancellation, the abandoned director allegation, Clare's false director/shareholder allegation, and the Rock and Roll Circus work-for-hire issue before using settlement pressure; and (9) directing that any conference be remote unless the Court makes a written finding that in-person attendance is necessary despite the seven-year remote history and different-continent Defendants.

This application is made in good faith to ensure any settlement conference is real, lawful, conflict-free, global where required, and capable of binding resolution of a claim pleaded as "US and elsewhere."

Respectfully submitted,

Robert Carruthers
Defendant Pro Se
United Kingdom
rkcarruthers@gmail.com